State vs. Ford et. als.

## No. 9437.

### THE STATE OF LOUISIANA VS. THOMAS J. FORD ET ALS.

1. In criminal prosecutions, on the hearing of the application for a change of venue by the accused, based on alleged prejudice in the community and on public excitement against him, it is competent to question a well informed witness on his opinion as to whether the accused can obtain a fair and impartial trial in the parish wherein the indictment is pending.

2. On the hearing, on such an application, *ex parte* affidavits taken on behalf of the accused are not admissible in evidence. The only evidence which the law contemplates is evidence taken in open court and contradictorily between the parties.

3. Conceding that the finding of the trial judge on such application is subject to review on appeal this cannot be done if the record does not contain the evidence adduced at the hearing.

4. A bill of exception is not the proper remedy to compel a trial judge to allow one of the parties to incorporate certain evidence in a previous bill reserved by him. The writ of mandamus is the remedy pointed out by law. The refusal of the trial judge to allow a party to incorporate in a bill testimony which is not shown by the record to have been reduced to writing under orders of the court, cannot vitiate a trial.

5. The arrest and indictment for perjury of witnesses for the defense, in connection with their testimony on a previous trial of the case, are not sufficient for a continuance of the second trial.

Public excitement in the community and inflammatory newspaper paragraphs are not good grounds for a continuance, unless shown, by means of improper influences, to be such as to intimidate or swerve the jury.

6. A juror who has formed and expressed an opinion on the guilt or innocence of the accused, based on reading of publications purporting to contain the evidence received on a previous trial of the same case, but who declares that he is free of bias or prejudice, and feels that he can try the case fairly and impartially, is not incompetent.

An error of the trial judge in ruling over the qualifications of a juror, is not sufficient to invalidate the trial, if it appears from the record that the juror did not serve in the case, and that the peremptory challenges of the accused were not thereby exhausted.

In a trial of several accused jointly, the peremptory challenges of the defense cannot be said to be exhausted as long as any such challenges are yet left to one or more of the accused.

7. An indictment jointly against several parties for murder includes in its terms the charge of conspiracy; proof of the same is, therefore, admissible, although conspiracy be not specially charged in words.

8. When conspiracy has once been proved, in the opinion of the trial judge, evidence of the acts and declarations of one of the conspirators in the prosecution of the common design is admissible against all the others.

9. In determining whether a proper foundation has been laid, by proof of an overt act of attack by the deceased or by the accused, for the introduction of evidence of the bad and dangerous character of the deceased and of previous communicated threats made by him against the accused, the trial judge is vested with the legal discretion of refusing to believe one or more witnesses and to ignore their affirmative testimony, if, in his opinion, not arbitrarily, he believes that the reverse is true.

10. The Governor's proclamation offering a reward for the capture and conviction of the parties to a crime, for which the trial is had, is not admissible in evidence, being irrelevant to the issue.

11. The trial judge will be upheld for refusing to charge abstract principles of law, which, under the facts and in his opinion, have no bearing on the case.

12. In charging the jury that under the constitution they are the judges of the law and of the facts, the judge may and should add that they must follow the law as given to them by the court.

13. A verdict may be received and entered on record on Sunday, because the proceeding is a mere ministerial act. A verdict thus rendered and received, when it appears that the case had been given to the jury before midnight on Saturday, is not bad or invalid, because it was received on Sunday.

APPEAL from the Criminal District Court for the Parish of Orleans. *Baker*, J.

*M. J. Cunningham*, Attorney General, *Lionel Adams*, District Attorney, and *Charles H. Luzenberg* and *Wm. R. Whitaker*, for the State, Appellee:

1. On the hearing of applications for change of venue, the fact whether prejudice existed in the public mind against the defendant to such an extent as to render an impartial trial unlikely, may be ascertained from the opinions of well informed witnesses.

State vs. Ford et als.

2. Defendants are bound by the evidence given by their witnessess upon examination in open court, and cannot contradict the testimony so given by the *exparte* affidavits *of the same witnesses.*

3. At common law, venue will be changed when a fair and impartial trial cannot be had in the county where the venue is laid; but good ground must be stated in support of the application, and it must appear that the removal is absolutely necessary 5 B. and Ad. 347 ; 27 E. C. L. R. ; 2 Nev. and M. 167 ; Roscoe Cr. Ev. 239. In the United States this question depends upon statutory and constitutional provisions. In most of them, the application is addressed to the judicial discretion, and the matter is not deemed one pertaining to strict right. 7 Ind. 160; 12 Ib. 548; 8 Ib 439. 31 Miss. 490; 32 Miss. 405 ; In some States this discretion may be revised on appeal. In others it cannot. This depends upon statute. 1 Bish. Cr. Pro. §72. In this State the power to change the venue is by statute, discretionary with the trial judge, as it is in Mississippi, Alabama, Indiana and Iowa. Rev. Stat. 1023; 11 Ann. 608; 30 Ann. 365 ; 5 Blackf. 576; Idem 579 ; 8 Blackf. 281; 2 Ala. 303; 10 Ala. 814; 28 Ala. 28; 31 Miss. 490; 32 Miss. 405; 10 Iowa 506 ; 12 Id. 479 ; 18 Id. 435. And where the only question is one of fact, the action of the trial judge is not reviewable. 11 Ann. 608 ; 30 Ann. 365, and authorities just cited. The Supreme Court of this State cannot revise those acts of the judge below that rest in his discretion. An unmixed question of fact is an insuperable obstacle to the exercise of a jurisdiction confined to the law alone. 4 Ann. 438 ; 6 Ann. 311, 593, 651 ; 7 Ann- 47; 122, 531; 8 Ann. 114; 10 Ann. 501; 14 Ann. 79, 673, 785; 26 Ann. 383 ; 20 Ann. 236 ; 23 Ann. 149; 22 Ann. 9; 35 Ann 854. Such questions can be considered only where the bill shows affirmatively that the ruling was based exclusively on a matter of law. 11 Ann. 81; Ib, 422; Ib. 479 : 14 Ann, 40; Ib 42. Whether a certain thing did or did not exist is a question of fact, and where no principle of law governs, and nothing more is necessary than the knowledge possessed by persons of ordinary understanding and observation, the relation of one fact to another is also a matter of fact. Prof. Jury Tr. § 262.

4. The Supreme Court cannot determine on a bill of exception to such refusal, whether a judge properly refused to sign a bill as drawn by counsel. The proper remedy in such case is by mandamus. 30 Ann. 537. The object of the writ of mandamus is to compel the person to whom it is directed to do something which he is supposed to be bound by his duty to do, which the prosecuting party has a right to have done, and for which he has no other specific remedy. C. P. arts. 829, 831, 838. This is the only remedy when a party desiring to appeal from a judgment of the lower court cannot obtain a statement of facts or the signature of the judge, to exceptions from his opinion. C. P. 899, 900; 31 Ann. 248 ; 32 Ann. 1043 ; 13 Ann. 484 ; 21 Ann. 268; 3 Martin 714.

5. Accused parties have no right to demand a continuance until after the disposition of prosecutions pending against witnesses upon whom they rely, nor do their apprehensions of personal violence afford cause therefor. The only legal grounds for continuance are : First, on affidavit setting forth the fact that a material witness is absent, that his presence will be secured by the next court, and that due diligence has been used to obtain his attendance. Second, on affidavits setting forth the inability of defendant, and in certain extreme cases, of his counsel, to attend the trial. Third, on affidavit showing that means had been improperly taken to influence the jury and the public at large, so as to prevent, at the time in question, the chance of an impartial trial. Whart. Cr. Pl. and Pr. § 584. The influence complained of must be the result of improper means, and its effect must be such as to prevent an impartial trial. The existence of ordinary newspaper paragraphs is not enough, nor is great excitement in the public mind sufficient *per se.* It must be such as to intimidate and swerve the jury. No degree of excitement which is the result of the defendant's own action, will constitute ground for continuance. Whar. Cr. Pl. § 598.

State vs. Ford et als.

6, 7, 10, 11, 12, 13, 14, 15, 16 and 18.  Jurors who have formed and expressed opinions as to the guilt or innocence of the accused, but who assert that they feel able to do impartial justice according to the law and the evidence in the case, are competent.  State vs. Dugue, 35 Ann. 327; 34 Ann. 180; 14 Ann. 462; Ib. 693; 22 Ann. 433; 29 Ann. 642; 32 Ann. 1241; 33 Ann. 890; Ib. 1110.  The test is the nature or character of the opinions entertained, without any reference to their derivation.  Prof. Jury Trials, § 186.  The purpose of the law is to obtain a fair and impartial jury.  Where this is accomplished, the law is satisfied.  The defendant is not prejudiced unless the person whose incompetency is alleged, served as a juror on the trial of the case, and was empanelled after the accused's peremptory challenges had been exhausted.  Whar. Cr. Pr. Pl. §§ 693. 694. The remedial interposition of courts in granting new trials is wholly for the benefit of parties, and not to compel the good conduct of judges.  3 Gra. and Waterm. N. Trials § 717; 2 Caines, 85; 3 Gilm. 202; 2 Ib. 185; 1 Ib. 475; 2 T. Rep, 5; 9 Cowen 680; 1 Scam. 18; 11 Conn. 342; Greenleaf's Rep. 442; 4 Day 42; 10 Geo. 429; 1 Brev. 109; 7 Wendell 79; 1 Nev. and M. 598; 4 B. Monroe 386; 24 Vt. 252.

17.  Accused parties are not entitled, as a matter of right, to a list of tales jurors summoned.  11 Ann. 685; 14 Ann. 461. Ib. 651; 15 Ann. 297; 30 Ann. 536; 34 Ann. 187.  An offer of the list, and time for its inspection, is all that can reasonably be asked.  That this was offered and refused, affords no ground of complaint.

19 and 20.  In cases of crimes perpetrated by several persons, when once a combination is established, the act or declaration of one accomplice in the prosecution of the enterprise, is considered the act or declaration of all, and, therefore, imputable to all, even though some were absent when the act or declaration was done or made.  Whar. Cr Ev. § 698.  The principle upon which these are admissible, being that the act or declaration of one is the act or declaration of all, is wholly unaffected by the consideration of their being jointly indicted.  Whar. Cr. Ev. § 700.  Nor is it material what the nature of the indictment is, provided that the offense involve a conspiracy.  Upon an indictment for murder, if it appear that others beside the prisoner conspired to perpetrate the crime, the act of one, done in pursuance of that intention, would be evidence against the rest.  Cr. Ev. § 701; R. vs. Stone, 6 T. Rep, 528; Hurd vs. State, 9 Tex. Ap. 1.  It is upon this principle that, upon a separate trial of principal and accessory, where a conspiracy between the two has been shown, the acts of one are admissible against the other.  Whar. Cr Ev. § 702; R. vs. Pym, 1 Cox Cr. Cas, 340; U. S. vs. Hartwell, 3 Clifford, 233; State vs. Hudson, 50 Iowa, 157.  These acts and declarations may be proved before showing the existence of the conspiracy, though such proof will be treated as nugatory, unless the conspiracy be afterwards independently proved.  Whar. Cr. Ev. § 698, a; Whar. Cr. Law, 8th ed., § 1401; State vs. Cardoza, 11 S. C. 195; Avery vs. State, 10 Tex. Ap, 199; People vs. Brotherton, 8 Cal. 444; 48 Md. 321.  Self-inculpatory declarations are always admissible in evidence, because from them, in connection with other circumstances, guilt may be logically inferred.  Whar. Cr. Ev. § 756; State vs. Edwards, 34 Ann, 1012.  The true question is, whether the evidence is *admissible for any purpose*; if so, it should be received.

21.  The actual fact of conspiracy may be inferred from circumstances, and the concurring conduct of defendants need not be directly proved.  2 Whar. Cr. Law. § 1398; 4 East 171.  Evidence need only be given of those acts of the defendants respectively, from which the jury may fairly and reasonably imply that they have all been acting in concert with one common design.  Archb. Pr. and Pl. 619.  Where the fact of conspiracy be once established, the declarations of one conspirator, in furtherance of the common design, as long as the conspiracy continues, are admissible against his associates, though made in the absence of the latter.  Whar. Cr. Law, § 1406; Whar. Cr. Ev. §§ 698, 700, 701.

22 and 23. As a general rule, proof of the bad disposition of the deceased is irrelevant. Where the case is one of deliberate killing, not in self-defense, it is no extenuation of the act to urge that the man was of ferocious character, Whar. Cr. Ev. § 68; Whar. Hom. § 605. and authorities cited. Where an attack was made on the prisoner by the deceased, this proof may be admitted to show that the accused had good reason to believe the attack to be felonious. The purpose is to show, under such circumstance, the *bona fide* of the belief. Whar. Hom § 606, If the killing were premeditated, or if the defendant in any way challenged the fight, the plea of self-defense cannot be invoked. Whar. Hom. § 482. Whether the facts justified the introduction of this character of proof is to be determined on the trial *by the district judge*.

It must appear affirmatively from the record, that the accused *knew* the ferocious disposition and temper of the deceased. State vs. Robertson, 30 Ann, 341; State vs. Burns, Id. 680; People vs. Lamb, 41 New York, 360; Reynolds vs. People, 17 Abb. 413; State vs. Smith, 12 Rich. Law, 430; Hurd vs. People, 25 Mich 405. Where there is a question properly presented by the evidence, whether the homicide was committed from malice, or was prompted by the instinct of self-preservation, and *there is no direct testimony as to what was done*, but the whole of the principal evidence is circumstantial, it may be proper to permit the defendant to give in evidence *what he knew* of the character of the person whose life he took. 1 Bish. Cr. Pro. § 627.

Threats by deceased against the life of the slayer are admissible under the same circumstances, for the same purpose, and are controlled by the same rules of evidence. Whar. Cr. Ev, § 757; Whar. Hom. § 694; 30 Ann. 341: Id. 379,

The threats must have been *recent*, and this fact must be shown by the record. 17 Mo. 544; 23 Id. 287; 47 Id. 604.

24. Self-serving declarations, when not part of the *res gestœ*, cannot be offered by the defendant on his own behalf Whar. Cr. Ev. § 690. Nor can such declarations be received when they are open to the suspicion of being part of defendants' plan of defense. They do not enter into the *res gestœ* when they are produced by the calculated policy of the actors. Whar. Cr. Ev. §§ 691, 263; State vs. Brown, 64 Mo. 367.

25. Proclamation offering a reward for the conviction of murderers cannot be relevant to discredit witnesses or to supply the motives which prompted the testimony, when they have no knowledge of the existence of such publication.

26. In many jurisdictions it is a matter in the discretion of the court below whether a witness who remains in the court-room, after having been ordered to retire, can be examined. Archb. Pr. and Pl., Waterman's ed., 573; Sartorius vs. State, 24 Miss, 602; Laughlin vs. State, 18 Ohio, 99; Parker vs. McWilliams, 6 Bing. 683; R. vs. Brown, cited in note in Beamon vs. Ellice, 4 Car. & P. 585; Harper vs. Com. 6 Gratt. 684; Woods vs. McPheron, Peck, 371; State vs Sparraw, 3 Murph. 487.

But the better doctrine now seems to be that his testimony should not be rejected because he remain in court after being ordered to withdraw, though his disobedience may lessen the value of his evidence. 2 Phillips Ev. 5 Am. ed. 744; Roscoe Cr Ev. 129; Whar· Cr. Ev. § 446; 7 Car. & P 350: 2 M. & R. 423; 1 E. & B. 14; 6 Gratt 684; 32 Id. 946; 3 W, Va. 705; 18 Ohio 99; 2 Ind. 435: 10 Iowa, 347; 71 N. Car. 591; 30 Mo. 236; 2 Nev. 321; 15 Kan. 363; 15 Ark. 624; 66 Geo. 508; 40 Ala. 684; 24 Miss 602; 20 Cal. 436: 52 Ala. 299.

27. A defendant has the constitutional right to address the jury. but that right must be exercised personally or through counsel. Constitution. Art. 8.

28, 29, 30; 31 and 32. Where. as in this case, the bill of exceptions does not show that the prisoner asked for instructions to the jury that would have had a material bearing on his case, or that he did not require the court to charge upon abstract principles of law, the objection to the consideration of the bill is insuperable. State vs. Riculfi, 35 Ann.

State vs. Ford et als.

770; State vs. Daly, just decided , State vs. Thomas, 34 Ann. 1084; State vs. Nelson, 22 Ann. 425; State vs. Jackson, 12 Ann. 679; State vs. Stouderman, 6 Ann. 287.

A judge not only may, but should, refuse to charge an abstract legal proposition which has no bearing on the case on trial, whether the proposition be correct or incorrect. The refusal to charge a correct proposition, if it be inapplicable, will be sustained as readily as if it were incorrect. State vs. Daly, just decided; 35 Ann. 774; Id. 970; Rev. Stat. 991.

33. Juries, while they have the physical *power*, have not the right to disregard the instructions of the judge on matters of law. Therefore, a charge that the constitution makes jurors judges of the law as well as of the facts, but that it is the duty of the jury to follow the law given by the court. is proper, especially when accompanied with the qualification that although the jury have, the physical power to disregard the instructions, they cannot do so without violating their oaths. Proff, Jury Tr. § 376 ; State vs. Johnson, 30 Ann. 904; State vs. Scott, 12 Ann. 387; 2 Sumner, 243; 1 Curtis C. C. 23; 10 Metcalf, 263.

34 and 35. Though Sunday is *dies non juridicus* when no *judicial* act is valid, yet *ministerial* acts are. A verdict received on Sunday is good, but not a judgment on the verdict. Bish. Cr. Pr, 3d ed. § 1001; 14 Ind. 39; 53 Ala. 402; 4 Cent. L. J. 154; 34 N. H. 202, 209 ; 9 Ind. 587; 5 Ind. 370; 74 N. C. 187; 3 Brews. 402; 14 Ind. 139; 1 Tex. ,Ap. 219 ; 5 Hunt, 558; 3 Ill. 384; 4 Strob. L. R. 486; 1 Southard, N. J., 156; 15 Johnson, N. Y., 118; 64 Ill. 243; 13 Ohio. 490.

36. Points not assigned as errors in the pleading, though discussed in appellants' brief, will not be noticed. There must be a written assignment, as required by Art. 897, C· P and it must be filed before the cause be submitted, or the right is waived. State vs, Bass, 12 Ann. 862; State vs. Sheard, 35 Ann. 543; State vs. Romano, Opinion Book 58, p. 1059.

In an indictment against two or more. the charge is *several* as well as joint, and the *conviction is several*. Whar. Cr, Pl. and Pr. § 314; Id. § 755; 49 Vt. 437; 2 Ired. 402; 32 Miss. 406.

Joint defendants may be convicted of different grades: thus, where two or more defendants are jointly charged in the same indictment with murder, it is competent to the jury to find one guilty of murder and another of manslaughter; and on such a verdict being rendered, it will not be disturbed by the court as irregular. Whar. Cr. Pl. and Pr. § 312; U. S. vs. Harding, 1 Wall. Jr. 127; Mask vs. State, 32 Miss. 406.

*Geo. H. Braughn, H. C. Castellanos, J. C. Walker, D. C. Moise* and *David Todd* for Defendants and Appellants :

1. At the hearing of an application for change of venue, the witnesses are required to testify according to their knowledge as to the state of feeling and prejudice in the community, against the accused, but it is the province of the court, and not for the witnesses to say whether or not the accused can have a fair and impartial trial in the parish from which the venue is sought to be changed.

2. An application for change of venue may be supported by *ex parte* affidavit to inform the court of the state of feeling and prejudice existing against the accused.

3. The Supreme Court will review the district court's refusal to allow a change of venue, when a bill of exceptions has been reserved. 30 Ann. 1028.

4. "The evidence, on which a change of venue has been refused by the judge. must be presented by bill of exceptions. otherwise the Supreme Court will not interfere." 31 Ann. 91. And when the district court has refused to allow the evidence to be presented by bill of exceptions, the cause will be remanded to be tried *de novo*.

5. An application for the continuance of a cause, in which eight material witnesses for the defense have been accused of perjury, charged to have been committed during a pre-

State vs. Ford et als.

vious trial in the same case, should have been allowed. The case should not have been tried, until the material witnesses for the defense could have an opportunity to remove the stain that had been cast upon them, or stand convicted of the crime charged against them. To force the accused to trial, while their witnesses were clouded by indictments, was, virtually to them, a denial of justice! To permit such a proceeding would be to place a most tyrannical power in the hands of the prosecuting officer! By the means recited, he could deprive any citizen accused of crime of all defense by *charging* merely his witnesses with perjury *in a preliminary examination*, or on a previous trial.

"While, ordinarily, the trial judge has great latitude in the hearing of applications for continuances. an *arbitrary* and *oppressive* refusal to continue a case when the application is based upon just, fair, legal and equitable grounds, is subject to review, and such refusal will be set aside by the court of error." McDaniel vs. State, 8 Smed. and Marsh 401, and authorities cited.

6, 7, 10, 14, 15, 18, are similar, and, therefore, considered together.

Persons who have many times declared that "the accused are guilty," and also said, "that they believe the accused to be guilty," "that they believe to be true the testimony they have read against the accused;" "that they have a bias in their mind against the accused;" "that they would not be inclined to believe evidence contradicting what they have read;" as those "who hardly think they could try the accused impartially," are not competent to serve in the case as jurors, and their declarations in these respects, will not be outweighed by their asseveration, in the same breath, "that they could, if chosen as jurors, try the accused fairly and impartially." The *doubt* inevitably raised by their own contradictions should be solved in favor of the accused, and the jurors excluded from the panel.

Exceptions 8 and 9 are abandoned.

11, 12, 13 and 16.

Persons who attended the former trial of this cause, as spectators in court, and there listened to the testimony of witnesses on the stand, and to the arguments of counsel; who believed that the testimony they heard was true, and who had formed therefrom opinions as to the guilt or innocence of the accused, were not competent to serve as jurors in the case. And when it appears that the peremptory challenges of certain of the accused were exhausted at the stage of the proceedings when these jurors were tendered to them, and their challenge for cause is overruled, they have suffered prejudice which the Supreme Court should remedy.

17. Counsel representing accused persons who are on trial in capital cases, are QUASI OFFICERS OF THE COURT; and the accused are deprived of a legal right they have when the judge *a quo* refuses to allow their counsel to inspect a list of talesmen whom the court has ordered to be summoned  The reasonable request to allow accused parties, or their counsel to inspect the names of talesmen who have been summoned to try the accused, should not be denied by the trial judge.

19 and 20, and 21 (18 previously given). Declarations and acts of one or more persons of several jointly charged with murder, *are not admissible against the others, to prove conspiracy,* when what was said or done *was not in furtherance of the common design.* And when it appears that what was said or done was more likely to hinder and defeat such supposed common design, the evidence should not be allowed to go to the jury.

Moreover, it is but fair to the accused that *the substance of all that was said, and not part* of what was said should be given, when the evidence is admitted by the court. Nor is *hearsay* evidence admissible to prove conspiracy any more than any other fact.

22 and 23. The accused should be allowed to prove that the deceased was a dangerous or turbulent man, and that he had made threats of violence against them, or either of them, and that those threats had been communicated to them, after a witness in their

29

behalf has testified "that he was present at the homicide, *and that the deceased began the difficulty by firing two shots at one of the accused, and that only after the second shot said accused returned the fire.*"

The right of the accused to introduce such evidence as to threats and the dangerous character of the deceased cannot be denied or impaired by the fact that the judge does not believe what the witness swore to. It is for the jury to say whether a witness is worthy of belief or not.

24. Where "conspiracy" and "constructive presence," or either of them, are relied on by the prosecution, it is proper for one of the accused to show that he was in the vicinity of the homicide, on the day thereof by request of another person, lawfully and peacefully, and that the refusal to admit evidence to prove such an important fact, was error on the part of the trial judge.

25. Where it had been shown, that a private detective had been employed to gather evidence for the prosecution, and that extraordinary assistance had been rendered the State, it was competent for the accused to show that a large reward had been offered by the executive of the State. Refusal to permit the Governor's proclamation, offering the reward, to go to the jury, was error on the part of the trial judge.

26. It is within the court's discretion, that witnesses shall be kept separate and apart from the court room during an important trial; and it is consistent with such order, that a witness should not be allowed to give evidence against the accused, when he has sit in the court-room and heard the entire testimony of a witness whom he is called upon to contradict by proof of previous statement made to him.

In such event, it is within the scope of the Supreme Court's jurisdiction to see that the accused have not been prejudiced thereby, and if they have been so prejudiced, to set aside the verdict and the sentence.

27. The judge *a quo* denied to one of the accused a *legal* and *constitutional right*, by refusing to allow a deputy clerk to read to the jury a written paper which he presented to the court as containing what he wished to say to the jury; and, at the same time, it is suggested to the court, in his behalf, that he is an illiterate man and was actually suffering from an abscess of the jaw, which made his articulation painful and indistinct, and the making of an intelligent and oral statement an impossibility.

28. It was error in the court below in refusing to charge as follows—requested by counsel for defense: "The law does not demand of the accused the same deliberate judgment which the jury can exercise in receiving the circumstances of the killing, but only that he should have actually and reasonably believed that the only way to protect himself from immediate danger was to kill his adversary."

29. The trial judge erred when he refused to charge as follows, when requested by counsel for the accused: "It is not necessary, in order to locate a homicide on the ground of self-defense, that there should be actual, immediate, impending danger. If the accused believed and had reasonable ground to believe there was immediate impending danger, and he had no other apparent and safe means of escape, he had a right to strike, although the supposed danger may not, in fact, have existed."

30. It was error in the court below in refusing to give the following charge: "If, in the opinion of the jury, there be an actual physical attack, of such a nature as to afford reasonable ground to believe that the design is to destroy life, or to commit a felony upon the person assaulted, the killing of the assailant in such a case will be justifiable homicide in self defense."

31. It was error not to charge when requested: "A principal in the crime of murder is one who was present aiding and abetting at the time the crime was committed. An accessory before the fact in the crime of murder, is one who was not present at the time and

State vs. Ford et als.

place when and where the crime was committed, but has instigated or procured, or counselled, or hired, or commanded another to commit the crime."

32. The trial judge again erred in refusing, when requested to charge as follows :
If the jury find that either of the accused was justifiable in firing a first shot at the deceased, and, that after that the deceased followed up the apparent, continued purpose of carrying out the supposed original design, the accused was justified in continuing to resist and repel his attack, and his right to act in self-defense, remained as long as he or they had reasonable ground to apprehend great bodily harm or death from him.

And what one has a right to do in defending himself,—his brother or his cousin present may do in his behalf. If he entertains such reasonable apprehension, a brother or cousin will be justified if death ensue.

33. There is error to the prejudice of the accused in the following charge given by the trial judge to the jury : "Although it is said that you are the judges of the law and the facts in criminal cases, *I charge you that you are bound to follow the law as given by the court.*" This is not the law of Louisiana, and virtually deprives an accused of trial by jury:

34. Upon all errors recited in this syllabus, a new trial should have been granted the accused, and the trial judge erred in refusing the same.

35. The court further erred in refusing to arrest the judgment, upon proper motion, and upon the grounds presented.

---

### UNDER ASSIGNMENT OF ERRORS.

A verdict delivered on Sunday *is a nullity* unless it is permitted by Statute.

There is no such statute in Louisiana.

Sunday in this State is a *dies non juridicus.*

---

The opinion of the Court was delivered by

POCHÉ, J. On the 13th of December, 1884, Thomas J. Ford, Patrick Ford, William E. Caulfield, William H. Buckley, John Murphy, Baptiste Favetto and Charles Bader were indicted jointly for the murder of Andrew H. Murphy. A few days later, Baptiste Favetto and Charles, Bader were severed from trial, on motion of the prosecuting attorney.

On the 27th of January, 1885, the five other accused were put on their trial, which resulted in a mistrial on the 9th of February following.

Their second trial began on the 18th of February and ended on the 28th of the same month, resulting in a verdict of guilty of murder against Patrick Ford and John Murphy, and of manslaughter against Thomas J. Ford, William E. Caulfield and William H. Buckley. On the 10th of March following, the two former were sentenced to death and the three last to the penitentiary for twenty years each.

They all five appeal, and their counsel urge numerous errors to their prejudice during the proceedings which resulted in their conviction.

Their complaints are incorporated in thirty-five bills of exception and an assignment of errors, and it now becomes our painful task to investigate and consider the same.

Two bills, numbered 8 and 9 respectively, which referred to the motion to quash the indictment and to the challenges to the array of grand and petit jurors, have been formally abandoned on appeal.

## CHANGE OF VENUE.

The first four bills embrace matters growing out of their motion for a change of venue, and as the points to be discussed are more or less connected, they will be treated under the same heading.

As Sections 3892 and 3893 of the Revised Statutes have a direct bearing on the questions submitted under this heading, we shall transcribe the same in full for facility of reference:

"Sec. 3892. When any person indicted in any of the district courts of this State, for any offense punishable by death or imprisonment at hard labor, shall desire to change the venue, he shall apply therefor to the district judge presiding. The application shall be accompanied with an affidavit that he has good reason to believe that by reason of prejudice existing in the public mind, or for some other sufficient cause, to be described by each party, he cannot obtain an impartial trial in the parish wherein the indictment is pending; that the application was made as soon as could be after the discovery of such prejudice or other cause, and is not for delay but to obtain an impartial trial."

"Sec. 3893. Such application may be made orally in open court, or by petition in chambers, and shall be accompanied with proof, under oath, of the party or his attorney, that reasonable notice has been given to the district attorney of such application. Thereupon the judge shall hear the party making the application, as well as the attorney representing the State; and if, on such hearing and examination of the evidence adduced, he shall be of opinion that the party applying cannot have a fair and impartial trial in the parish where the indictment is pending, the judge shall award a change of venue."  *  *  *  *  *  *

On the hearing of the application, the following question was propounded to the witnesses under examination:

Whether, in their opinion, the accused could obtain a fair and impartial trial in said parish?

The objection was that the witnesses should have been restricted to testify to the fact of the existence of prejudice, and should not have been allowed to express their opinion touching the chance of the accused to obtain a fair trial in the parish.

It is argued that in ruling as he did the judge delegated to some extent his judicial functions to the witnesses. The argument is unsound.

The whole issue under such an application hinges upon a question of opinion.

The very affidavit which the law requires of the accused in support of his application, exacts nothing more than the expression of his having " good reason to believe" that he cannot obtain an impartial trial, and the law requires nothing more of the judge to justify him in granting the change of venue than his opinion, predicated on the evidence adduced, that the accused cannot have an impartial trial in the parish wherein the indictment is pending.

The very statement of a witness touching the existence of prejudice in the community involves and incorporates a conclusion reached and formed by the witness on the utterances and conversations which he has heard from other persons. Prejudice is not visible or tangible, and cannot be heard or seen moving about in a community. It is itself the result of a friction of ideas, based on opinions formed, expressed, circulated and crystallized into excitement or into a spirit of persecution or vengeance. The existence of such a prejudice or excitement in the public mind is the legal requirement which must form the just basis of a change of venue.

It follows, therefore, that the conclusion in the mind of a witness that such a spirit in the community would deprive the accused of an impartial trial does not involve the expression of an opinion, judicial in its character, in a greater or more reprehensible degree, than the mere statement touching the existence of such a prejudice in the public mind. Such was the conception of that kind of testimony formed by our immediate predecessors when, in Daniel's case (31 Ann. 911) they used the following language:

" If that (the evidence) taken by the prisoner's counsel had reached us with a statement certified to by the judge, that—on the hearing of the application for a change of venue—nine credible and uncontradicted witnesses had been examined, and that every one of the nine had sworn *that by reason of prejudice existing in the public mind, the accused could not obtain an impartial trial* in the parish of Jefferson, he would have presented a question of law resting on admitted facts." * * (The italics are ours.)

We conclude that the question was proper and that the objection is unfounded.

The defendants next complain of the refusal of the judge to receive in evidence on the hearing of their application an *ex parte* affidavit, signed by sixteen persons, taken by them in support of their right to a change of venue.

Their counsel contend that a proper construction of the sections herein above transcribed contemplate and justify the introduction of such evidence in support of an application for a change of venue.

A careful reading of the two sections shows that only two kinds of affidavits are therein referred to, required or authorized. The first is the affidavit of the accused, which must accompany his application. The second is the affidavit of the party or of his counsel, to prove that notice of the application has been given to the district attorney.

When the law comes to treat of the hearing or trial of the application, it requires the judge to "hear the party making the application as well as the attorney representing the State," and "to examine the evidence adduced."

It is too plain for argument that the only evidence which the law requires the judge to examine is evidence to be adduced and taken contradictorily between the parties; and that it clearly contemplates the right of cross-examination of the witnesses introduced by either party.

The affidavit was properly excluded.

The third bill is taken to the judge's refusal of the change of venue."?

As suggested by defendants' counsel, the transcript is not in a shape to enable us to review the judge's ruling on this point, for the reason that it does not contain the evidence adduced on the hearing of the application.

The absence of that evidence is attributed by them to the judge's refusal to allow them to incorporate the same in their bill of exceptions, and this is the subject-matter of their fourth bill taken under the present heading.

Defendants' counsel do not show that the testimony was taken down in writing under the orders and directions of the court, and they fail even to assert either in their bill, their oral argument or their brief, that they requested the testimony to be thus taken down in writing. On the other hand, the attorney general and his associates state emphatically that the testimony was not thus reduced to writing; and their statement is not contradicted by their opponents, but stands corroborated by the record.

It is elementary in criminal practice that testimony on any question is not reduced to writing unless special request is made therefor,

It is therefore safe to conclude that in this case the testimony adduced on the hearing of the application for a change of venue was not reduced to writing under the control of the court, and hence the judge was powerless to order its introduction into a bill of exceptions. We

infer that counsel for defendants had obtained it from some person who had taken it down, independently of the court, and that it was the testimony which they desired to incorporate in their bill, but they did not annex it to either the bill now under consideration or to another bill which they might have taken to the judge's refusal to allow them to thus annex it. Their objection, as it comes up, is levelled at the judge's refusal to incorporate the testimony of "the witnesses who were sworn and testified at the hearing of said application."

The testimony which they referred to had either been taken down under orders of the court, or by a private stenographer. In either event, their remedy would have been by the application of a writ of mandamus to this Court with a view to coerce a compliance on the part of the trial judge with their request.

Under such an issue we could have considered the propriety of receiving in evidence testimony which had been taken down by a private party and other matters connected with our right of reviewing the conclusions reached by the judge on his refusal of the change of venue.

But as matters now stand we cannot, even if we felt authorized, review the action of the district judge, by reason of the absence of the evidence on which he based his conclusions; and the laches in this connection are to be imputed to the defendants themselves. The writ of mandamus was the remedy which the law extended to them; they have chosen to invoke other remedies which are not available; they must abide the consequences. 3 M. 714; Broussard vs. Trahan's Heirs, 13 Ann. 484; State ex rel. vs. Judge, 32 Ann. 1043; State ex rel. Mullen vs. Judge, 35 Ann. 248; State ex rel. Wyly vs. Judge.

The authority of Hyland's case, 36 Ann. 87, is not in point. In that case the judge had refused to hear the testimony of witnesses whom the defendant desired to be heard in support of his motion for a new trial, and this Court found error in the refusal and remanded the case so as to afford to the defendant an opportunity of having the testimony or the affidavits of his witnesses considered.

In the instant case the witnesses were heard and the complaint is that their testimony, not shown to have been reduced to writing in due form of law, was not allowed to be incorporated in a bill of exceptions.

Under these views, we eliminate from this discussion the question of our power to review the opinion formed from the evidence adduced by the trial judge as to the chances of a fair trial for the accused in the parish wherein the indictment was found.

BILL No. 5.

The next bill complains of the refusal of a continuance of the case.

The application embodied two grounds:

1. The arrest and indictment, between the first and second trials, of several of the most important witnesses of the defense under a charge of perjury, on account and growing out of their testimony on the first trial of the case.

2. The state of public excitement against the accused, inflamed by newspaper reports and articles, and by the indictment of their witnesses.

Their counsel argue that the arrest of their witnesses was calculated to intimidate them and to weaken the effect of their testimony on the second trial.   Hence they contend that the trial should have been postponed "until said indictments against said named witnesses shall first have been determined by verdicts acquitting the said witnesses."

I.

The mere statement of the proposition is sufficient to demonstrate the unreasonableness of the application founded thereon.

To postpone this trial until the acquittal of the indicted witnesses might, in the possibility of human events, have been an indefinite postponement.   What then would have become of these defendants' constitutional right to a speedy trial, especially while they were lingering in jail?   And again, if the trial previously had of the indicted witnesses had resulted in their conviction, these defendants would in that event have been entirely deprived of their testimony.   As suggested by the district attorney, if steps had been taken by him to precede this trial by that of the indicted witnesses, they might with as much propriety, and perhaps with more force, have clamored for the trial first and the acquittal of the present defendants, whose indictment was older in date, so as to have the benefit of their testimony for the vindication of their character from the aspersion of perjury.   It is clear that a prosecuting attorney cannot be controlled in the order of taking up his trials by any such or similar considerations.

The arrest of their witnesses, under the circumstances, may have worked a hardship on these defendants, but it was a matter beyond the control of the trial judge and for which we ourselves are powerless to supply a remedy.

II.

On the subject of public excitement as affecting the continuance of criminal trials, the authorities are in accord that the public excitement must be of a nature to intimidate or swerve the jury.   We have given due consideration to the numerous newspaper articles which have come

up with the record. They are of the usual temper when the Press deals with a crime enormous in character and shocking in its effects on society. Some of the articles venture on an analysis of the testimony given at the first trial and argue in favor of the guilt of these defendants. While we do not propose to approve of the disposition of certain newspaper writers to attempt to forestall public opinion on the merits of litigation pending on trial before the courts of the country, even in matters on trial before this tribunal, we believe that the public understands, as we do, that the views thus published are after all but the opinions of one man, and that in many cases they carry no more weight than the utterances of other individuals expressed in private in their social circles.

Hence, very respectable authorities on criminal law have laid down the rule that the publication of ordinary newspaper paragraphs on the subject of a trial is not enough to justify a continuance of the cause. Wharton Crim. Pleading and Practice, § 598.

It is not even intimated in the defendants' application that any undue influence had been brought to bear on the minds of the persons drawn to serve as jurors in the case; and it is settled by authority that a state of public excitement against the accused is not a good ground for a continuance. 7 Watts & Sergeant's R., p. 422.

In matters of continuance of causes great discretion is always vested in the trial judge, and his rulings thereon are not disturbed except in cases of glaring injustice.

We feel compelled to uphold him in his conclusions on the present application.

Bills numbered 6, 7, 10, 11, 12, 13, 14, 15, 16 and 18, have reference to the rulings of the trial judge on the qualifications for competency of certain jurors who had previously formed and expressed opinions as to the guilt or innocence of the accused.

From the record it appears that there is a great deal of similarity between the alleged disqualifications which are discussed in the several above enumerated bills, and we therefore feel justified in treating of them all under the same heading.

The record shows that on their *voir dire* all twelve of the jurors who are the subject-matter of these bills stated that they had read the publication in the papers of what purported to be the testimony adduced on the first trial of this case, and that they had formed and expressed their opinions respectively touching the guilt or innocence of the accused; and some of them stated that from their reading they were of the impression that the defendants were guilty of the crime charged to

them. It also appears that in addition to these statements, four of the jurors aforesaid stated that they had heard portions of the proceedings in the fiist trial. But all of them said substantially and unequivocally that they were free of bias or prejudice for or against the accused, or any of them, and they felt in a state of mind which would permit them to try the case fairly and impartially, under the evidence which they would hear, and according to the law which would be given to them in the case.

This emphatic declaration places these jurors within the scope of the rulings of this Court in DeRance's case, 34 Ann. 187, and Dugay's case, 35 Ann. 327.

It would be work of supererogation to reproduce here the language which we used in those two opinions. We will only add that several other courts of our sister States have reached similar conclusions on the subject of qualifications of jurors. A learned commentator, Proffatt, in his work on "Trial by Jury," has compended the following principle from the *dicta* of several courts on this important subject:

"Modern adjudications pay more attention to the nature or character of the opinion, without much or any reference to its derivation." No doubt "the character of the age in which we live has, to a great extent, compelled courts to take this position. The time is long passed when a person could be supposed to come into a court without any knowledge or information of a case upon which he is called to sit as a juror. The publicity now given to all occurrences—even ordinary cases—either by public rumor or the reports of the press, is such that the most indifferent and uninformed person must know or hear something of a case, and this knowledge or information must impress him necessarily more or less, and therefore courts have recognized this, and the former tests of competency are being more disregarded and the simple inquiry is made as to the *nature* or *strength* of any opinion one may have formed, without regard to its origin." Id. § 186.

But the record affords a still more complete answer to the position of defendants' counsel, by showing that the obnoxious jurors did not sit in the case.

It follows therefore, that, conceding that the judge had committed some error in ruling that these jurors were competent, no injury was thereby inflicted on the accused by whom they were all peremptorily challenged, and that without exhausting their peremptory challenges.

There is no force in the distinction invoked by defendants' counsel, on the ground that two of the accused had, at that stage of the proceedings, exhausted their respective challenges. The charge was

joint, the trial was joint, all motions and objections were made jointly, all bills of exception were reserved for the joint benefit of all the accused and all challenges enured to their joint benefit.

The record shows that the jury which tried the case was the joint selection of the joint counsel of the accused, accepted, we repeat, before their peremptory challenges were all exhausted.

Bill No. 17 is reserved to the refusal of the district judge to have a copy of talesmen jurors served on the accused.

It is well settled that they were not entitled to the same as a matter of right. State vs. Gunter, 30 Ann. 536, and authorities therein cited.

Defendants' counsel also complain, with some warmth, of the judge's refusal to allow them to inspect said list. This involves a matter of discipline over his court and the officers thereof, with which this Court cannot and will not interfere. State vs. Duck, 35 Ann. 764.

Through their 19th bill defendants charge error in admitting the testimony of four witnesses to prove a conversation between two of the accused, Thomas J. Ford and John Murphy.

The avowed object of the testimony was to prove a conspiracy.

The objections were, that no conspiracy was charged, and that the conversation could not be given to the jury, in the absence of proof that the witnesses had heard the whole conversation.

An indictment jointly charging several persons with the commission of a murder, necessarily involves a conspiracy, and proof of the same can, therefore, be admitted without a formal allegation of conspiracy. Whar. Crim. Evidence, § 701.

The record shows that the conversation had taken place at the foot of the steps of the Criminal court building, in November, 1884, on the day that the trial was fixed in a case of great interest to the accused Thomas J. Ford and the deceased, A. H. Murphy, and that the witnesses stated that the conversation had been begun and had ended within their hearing. This was a sufficient compliance with the rule invoked by defendants' counsel.

We have read their argument intended to show the improbability of such a conversation, its vagueness and its insufficiency, as proof of a conspiracy. These considerations were doubtless suggested by them to the jury to whom they properly belong, but they can have no bearing upon the legal question of the admissibility of the evidence.

### BILL 20.

Much of what we have just said touching arguments of defendants' counsel which go to the effect, rather than to the admissibility, of evidence applies to their contention on their next bill, which involves the

ruling of the judge in admitting the testimony of a witness from whom the accused Murphy had tried to borrow a pistol, with the declaration that Thomas J. Ford had told him that he wanted him to kill "Cap" Murphy, the deceased. The objection was that no conspiracy had been charged, and that the declarations and conversations of the accused Murphy made and had out of the presence and hearing of the other defendants, were not evidence against them.

In the bill the judge informs us that, in his opinion, a conspiracy had been proved; we have already shown that a conspiracy in such a case need not have been specially alleged. Hence the evidence was admissible. The rule which governs such questions is as follows:

"In cases of crimes perpetrated by several persons, when once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise, is considered the act or declaration of all, and therefore imputable to all. All are deemed to assent to or command what is said or done by any one in furtherance of the common object. A foundation, however, must first be laid *aliunde*, by proof sufficient, in the opinion of the court, to establish *prima facie* the fact of conspiracy between the parties; the question of such conspiracy being ultimately for the jury. Wharton, Criminal Evidence, secs. 698, 701, and authorities therein referred to.

These considerations are sufficient to dispose of Bill 21, which is levelled at the admission of testimony to show declarations made by the accused Murphy to the effect that he had instructions from the accused T. J. Ford to kill the deceased. United States vs. Gooding, 12 Wharton 469.

In their bills numbered 22 and 23, the defendants discuss the alleged error of the trial judge in rejecting proffered evidence of the bad and dangerous character of the deceased, and of threats of violence and personal injury made by him against the defendants or some of them.

Such proof is of the essence of the plea of self-defense, and must in all cases be preceded by proof that the party deceased had made some assault on his slayers or some hostile demonstration against them at the time of the killing.

No one has the right to kill another simply because the latter is a bad man, or because he has made some threats against him. Wharton's Criminal Evidence, secs. 68, 757. Wharton on Homicide, secs. 482, 606; State vs. Lee Vines, 34 Ann. 1078; State vs. Jackson, 33 Ann. 1087.

The practical working of this rule is virtually conceded by defendants' counsel, and their main contention is, that a proper foundation had

State vs. Ford et als.

been laid by the testimony of one of their witnesses, who had sworn that he had seen the deceased open the affray by firing first at Pat Ford, who had returned the former's fire after he had been shot at twice.

In his reasons added to the bills the judge states in substance that, in his opinion, the foundation required by law for the introduction of the proffered evidence had not been laid, for the reason that numerous witnesses on behalf of the State, whose testimony had been corroborated by all the witnesses of the defence save one, had testified that the deceased had not begun the conflict, and that he did not believe the witness who was held as having seen the deceased open the fire.

The question for solution is therefore simple. It is this: Does the rule governing the admission of such testimony content itself with *testimony* of an overt act by the deceased, or does it require *proof* of such an act? There is a wide difference between *evidence* of an act and *proof* of the same. The theory of defendants' counsel seems to be that there is no difference between the two, and that under the rule, any testimony in favor of the commission of an overt act on the part of the deceased person, is a proper and sufficient foundation for the introduction of such testimony, and that the trial judge is thus stripped of all discretion and of all power to consider the veracity or credibility of the witness making the statement.

Such an interpretation of the rule is flagrantly erroneous. "They" (the prior threats of the deceased), says Wharton, "are, however, inadmissible, unless proof be first given that there was an overt act of attack, and that the defendant, at the time of the collision, was in imminent danger." Sec. 757.

In passing on such a question, the trial judge must of necessity be clothed with the authority to decide whether a proper foundation has been laid for the proffered evidence, and that authority necessarily includes the discretion to ignore and not consider testimony which his reason refuses to believe.

Without such authority, which is not arbitrary, but involves the exercise of sound, legal discretion, the trial judge would be a mere automaton, or at most in the attitudes the presiding officer of a deliberative assembly with no greater powers than those of announcing the utterances or conclusions of others.

We are, therefore, clear in our conviction, that the trial judge in the case at bar committed no error in excluding the testimony discussed in these two bills.

Of course, the discussion on these and similar matters did not take place in the presence of the jury; and no intimation was given to them by the judge as to his opinion of the credibility of the witness who had testified touching the alleged overt acts of attack of the deceased.

## BILL 24.

A witness for the defense having stated that on the day of the homicide, December 1, at 2 o'clock p. m., the accused, Thomas J. Ford, was at the engine house of a certain fire company, he was asked the following question: "Was Judge Ford at the engine house between half past one and two o'clock on the first of December, 1884, in obedience to a previous engagement?"

The question was resisted by counsel for the State, on the ground that it was calculated to elicit an expression of opinion; the objection was maintained and the defense complains, asserting that the statement that Judge Ford was to be at a place named at a specified time in obedience to a previous engagement is but the statement of a fact.

It is too plain for argument, that no one but the party himself knew where he intended to be at any particular time in the future, and *a fortiori* for what purpose or reason he proposed to be there.

The answer to the question would, therefore, have involved the witness in the expression of two opinions. He might have heard the party making an engagement to be at that particular place at a specified time. But how could he know that the engagement would be kept? Thousands of reasons might have intervened to prevent the consummation of the design—and other motives but the one supposed by the witness, might have prompted Judge Ford to keep his engagement.

The whole subject was one of mere opinion, supposition, surmise or conjecture. The question was clearly inadmissible.

The judge did not, by his ruling, deprive the accused of the means of proving a previous engagement to be at that time at the engine house. The only effect of his ruling was to exclude the mode adopted by counsel of making that proof.

In their bill numbered 26, defendants' counsel complain of the refusal of the judge to admit in evidence the Governor's proclamation offering a reward of $1000 for the arrest and conviction of the murderers of Cap. A. H. Murphy.

What could be proved by that proclamation, unless it be that the Governor had done his duty under the law? Nothing shows its relevancy on the issue in the case,

But counsel in their brief intimate that certain witnesses for the State, whom they designate as a "jail gang," might have been influenced in their testimony by the hope of the tempting reward.

These witnesses should have been attacked directly; but they could not be impeached in this way. The law which authorizes such proclamations was conceived for a laudable object, and it cannot be construed as a reprehensible inducement to perjury.

It has been held that it is no objection to the competency of a witness that a reward has been offered to be paid on conviction of the prisoner, to which the witness may be entitled. 78 Baldwin's Reports, vol. 1; U. S. vs. Wilson and Porter.

The evidence was properly excluded.

Bill No. 26 presents the following incident: During the progress of the trial, a member of the press, not a witness summoned in the case, who had heard the testimony of a witness for the defense, was put on the stand by the prosecution for the purpose of proving that the witness had made to him statements different from the testimony he had just given in the case. Defendants objected to his being sworn because he had not been "sequestered" like all the other witnesses.

This party had not been summoned as a witness in the case; he was present in court as a press reporter, and the need of his testimony for the purpose for which he was sworn could not have been foreseen by the counsel for the prosecution. As he was not a witness in the cause at the time that the order was given to sequester the witnesses, he could not have been included in, or effected by the same.

This was, after all, a matter entirely within the discretion of the court. The order to separate witnesses is not one of right, and its modification by the judge, within reasonable bounds, will not be disturbed on appeal. Bishop Crim. Pro., 2 ed., vol. 1., secs. 1086, 1087, 1088. State vs. Revells, 34 Ann. 383.

In their bill numbered 27, defendants' counsel complain of the refusal of the judge to allow the reading by the clerk of a statement prepared for the accused, John Murphy, as his statement to the jury.

The bill shows that Murphy could not well understand, so as to read with effect, certain expressions used in the document; hence his counsel desired to have the statement read to the jury by the clerk. Why could it not have been read by one of the counsel themselves? Whence derives the power to coerce the clerk as an organ of the defense?

The accused was not deprived of the privilege to make a statement in his behalf to the jury, he was only denied the request to speak to them through the instrumentality of the clerk.

With all our best efforts, we are not able to consider that objection as serious.

Defendants' counsel next complain of the refusal of four special charges on the law of self-defense and one on the law of principal and accessory before the fact in the crime of murder, and that matter is embraced in the bills numbered 28, 29, 30, 31 and 32.

The grounds of the judge's refusal are that the principles announced in the respective charges requested are foreign to the nature of the case on trial, and have no application to or connection with the facts which had been established by the evidence.

Here again counsel for the defense loudly assert the statements of the witness herein above referred to, touching the attack made on the accused Pat Ford by the deceased, and they stoutly deny the assumed authority of the judge of passing upon the credibility of the witnesses. The reasoning which we used on this subject in connection with the question of the admissibility of the evidence of threats made by the deceased, is entirely applicable to the present discussion and need not be repeated here. The charges as prepared by counsel would therefore, under the circumstances, have amounted to nothing more than declarations of abstract principles, which are strongly reprobated by our jurisprudence.

In disposing of similar objections in Garic's case, 35 Ann. 970, the present court said : " The trial judge is not bound to charge on a particular point of law, although the charge may announce a correct legal principle, where, in the exercise of a sound legal discretion, he is satisfied that such charge is not applicable to the case."

In his reasons for refusing the charge on the law of principal and accessory, the judge states that there was ample proof of the actual presence of four of the defendants at the scene of the homicide, which had been proved to be the result of a conspiracy between the five; and that there was proof sufficient of the constructive presence of the fifth accused in sight of the killing, from the commencement to the end. Hence he was justified in refusing the charge requested, which was thus shown to have no bearing on the facts of the case.

His course finds abundant support in numerous decisions of the Supreme Court. State vs. Stoudermann, 6 Ann. 287; State vs. Thomas, 34 Ann. 1084; State vs. Riculfi, 35 Ann. 770; State vs. Daly, recently decided, not yet reported.

Bill No. 33 has reference to that portion of the judge's charge which defines the powers of juries in criminal cases.

It reads as follows:

"The Constitution of this State makes jurors the judges of the law as well as of the facts in criminal cases; but while this is so, I charge you that it is your sworn duty to follow the law given to you by the court, and you are not its judges to the extent claimed by counsel. The very moment you feel that the law expounded in this charge is the law of this case your oaths compel you to apply it to the facts, and though you have the physical power to disregard it you cannot do so without violating your oaths. In taking the law from the court, you incur no responsibility; in disregarding it, your error is without remedy. But on the other hand, misstatements of the law by the court to the prejudice of these accused may be excepted to by their counsel, and its correctness passed upon by a higher tribunal. Your oath binds you to rest your verdict on the law and the evidence."

The principles contained in these utterances are qualified by counsel as a startling announcement, replete with great danger to the very system of jury trials. We have carefully considered it in the light of logic and of unquestioned legal and judicial authority, and we unhesitatingly indorse it in all its parts.

The provision of Article 168 of the Constitution reads thus: "The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge.

In formulating this familiar rule of criminal law, the framers of the Constitution did not purport to announce a new or unknown doctrine. They merely proposed to incorporate in the organic law a principle which had been steadily enforced in our criminal jurisprudence since the dawn of its existence. State vs. Johnson, recently decided.

The best judicial authority is that the declaration to the jury that they are the judges of the law and of the facts must be followed by an explanation similar to that contained in the charge now under consideration.

The jury must find the facts which they believe to have been proven, and when they consider what, if any, crime results from the state of facts, they must apply the law which has been given them by the judge. If it were otherwise, if the jury were the absolute judges of the law, where would be the necessity of a charge by the presiding judge as required by the Constitution and by the rule of law which defines their powers? If they are legally authorized to disregard the law as expounded by the judge, why should the appellate tribunal be called to reverse the judgment and set aside the verdict on the ground

30

of· an erroneous charge by the judge? We are in entire accord with the reasoning used in the case of Scott, 12 Ann. 386, and by Chief Justice Manning in Johnson's case, 30 Ann. 905; and we adopt the language which he quotes in his concurring opinion from Chief Justice Shaw, and from Justices Story and Curtis. See also Proffat Jury trial, § 376.

Bill No. 34 was reserved to the judge's refusal of the new trial applied for, and it embraces only such matters as have hereinbefore been discussed. In their brief, under this heading, defendants' counsel discuss what they qualify as the anomalous .character of the verdict—of murder as to two of the defendants and of manslaughter as to the others. It is suggested that, under the nature of the charge and of the evidence, they should have been found equally guilty or innocent.

This so called anomaly is not brought up in any proceeding warranted by law. Doubtless counsel felt embarrassed to decide in whose mouth they could place the complaint.

It would have been uncharitable on the part of Pat Ford and John Murphy, and it would have been of very questionable wisdom on the part of the others.

But, be that as it may, under an indictment for murder, a verdict of manslaughter is legally responsive to the charge. And it is well settled that this Court can have no possible concern with the process of reasoning by which the jury reached the verdict of manslaughter.

The 35th and last bill submitted by the defense has reference to the fact that the verdict was ordered to be recorded a few minutes after twelve o'clock in the night of Saturday the 28th of February.

The charge is that the verdict is null because it was rendered on Sunday.

The record shows that the verdict was received and announced before midnight, but ordered to be recorded a few minutes after that hour.

We have carefully examined all the authorities relied on by both parties on this point; and we find that the preponderance of the same favors the plain and common sense rule which, as a matter of necessity, allows the court to receive a verdict and to discharge the jury on Sunday, but not to enter judgment.

Bishop lays down the rule as follows: "Though Sunday is *dies non juridicus*, wherein no judicial act is valid, but ministerial acts are, a verdict received on Sunday is good, yet not a judgment on the verdict. And on Sunday the court may find that the jury cannot agree and discharge them." This rule has been uniformly applied in all cases like the case in hand, where the cause had been given to the jury before

midnight on Saturday, and a verdict rendered during the same night, even though it be in the early hours of Sunday.

The very principle which underlies the sanctity of the Sabbath would prompt the rule which would place it in the power of the twelve jurors who had accomplished their official mission, to join in the sanctification of the day instead of keeping them confined in idleness—perhaps dangerous. 5 Hunt, N. Y.; Roberts vs. Brown, 558; 4 Strobhart's So. Ca. 456; Hetter vs. English; Van Piper vs. Van Piper, 1 Southard, 156; 15 Johnson, N. Y. 118; Hotheling vs. Osborn.

After a patient and thorough examination, and after a most careful consideration, of the numerous points suggested and discussed on behalf of these unfortunate defendants by their most zealous and ingenious counsel, we have found no error to their prejudice in the proceedings; hence we are powerless to grant them any relief.

Judgment affirmed.

Rehearing refused.

Mr. Justice Todd takes no part in this decision.