## No. 8807.

## THE STATE OF LOUISIANA vs. JOSEPH R. RICULFI AND LEONIDAS M. MCCLUNG.

An assignment of errors is not the proper mode of bringing up for review alleged misdirections of the lower court to the jury. Bills of exception should be taken to such portions of the charge as are objected to, or to the refusal to charge as requested, and when it is claimed that the particular facts in evidence justify or require such charge, the facts should be stated in the bill to which the charge is claimed to be pertinent.

A Judge not only may, but should refuse to charge an abstract legal proposition which has no bearing upon the case on trial, whether the proposition be correct or incorrect, or whether it be correct in part and incorrect in part. Even if it requires qualification, limitation or explanation, it may be refused.

A bill of exceptions should contain a statement of the facts which present the question of law, and the Judge should not sign a bill containing a statement of facts at variance with his own. He has the power and the right to correct an erroneous statement in the bill.

Character is an important element in a criminal case when evidence of it is admissible, and it must be considered in connection with and as a part of the whole testimony, and due weight given to it, but it cannot destroy conclusive evidence of guilt.

APPEAL from the Criminal District Court for the Parish of Orleans. *Roman*, J.

*J. C. Egan*, Attorney General, for the State, Appellee:

1. It is not permissible for counsel to assign as errors, patent upon the face of the record, alleged errors in the charge of the Judge when there are no errors of law apparent, and no objection made to the charge at the time it was delivered. 11 An. 192; 22 An. 456.

2. The Judge in his charge to the jury is not restricted to the language of the special charges requested by counsel; or to give the same to the jury without explanation or elucidation.

3. Additional charges will be refused when they have no application to the case at bar.

4. "It is well settled that, to excuse a homicide by a plea of self-defence, the apprehensions of the accused must have been excited by an actual assault." 22 An. 454; 14 An. 827; 5 An. 428.

5. "In like manner it is obvious, and so it is often stated to the jury, that a good character can have little or no practical weight, with them in a clear case, where the evidence against the prisoner is direct and otherwise satisfactory." Bishop on Crim. Procedure, Sec. 1063; Vol. 1, Crim. Law Mag. p. 800; Vol. 2, p. 261; Vol. 3, pp. 256, 421, 757.

*Wm. R. Whitaker, Lionel Adams, Henry C. Castellanos* and *A. Gastinel* for Defendants and Appellants:

1. It is the duty of the court to instruct the jury on the whole law of the case, and not partially. Proffat on Jury Trials, § 325; Whar. Crim. Law, § 3162; 31 Cal. 409; State vs. Ricks, 32 An. 1100; State vs. Rance, 34 An. 191; Ellison vs. State, 10 Tex. App. 361; Erwin vs. State, 10 Tex. App. 700; Long vs. State, 5 Tex. Law J., Mar. 1882, p. 379; White vs. State, 10 Tex. App. 381; People vs. Cummins, Mich. Sup. Court, 11 N. W. Reporter, Jan. 21, 1882, p. 184; Reynolds vs. State, 8 Tex. App. 412; 12 An. 264; 13 Conn. 453; 12 Serg. & Rawle, 149; 2 Pet. 15; 3 Gra. & Wat. New Trials, §§ 805–8.

2. If a good character for peace has been proven, such good character may be sufficient to create or generate a reasonable doubt of guilt, although no such doubt would have existed but for such good character. Evidence of good character is not only of value in doubtful cases, but is entitled to be considered where the testimony tends, very strongly, to establish the guilt of the accused. It will sometimes create a doubt, when, without it, none would exist. Fields vs. State, 47 Ala. 603; Waterman's Crim. Dig. p. 150, § 232; Lowenberg vs. People, 5 Parker, 414; People vs. Cole, 4 Id. 35; Hall vs. State. 40 Ala. 698; Jupitz vs. People, 34 Ill. 516; People vs. Ashe, 44 Cal. 288; People vs. Fenwick, 45 Id. 287; People vs. Kaina, Id. 292; People vs Lamb, 2 Keyes, 360, affirming, 54 Barb. 342; Stover vs. People, 56 N. Y. 315; State vs. Henry, 5 Jones, 65; Felix vs. State, 18 Ala. 720; State vs. McMurphy. 52 Mo. 251; S. C. 1 Green's Crim. Reps., 640.

3. Threats made by the deceased against the life of the prisoner, can never be introduced for the naked purpose of justifying the killing, but they are admissible because they tend to show the imminence of danger to the defendant's apprehension. Whar. on Hom. § 525; Monroe vs. State, 5 Ga. 85; Howell vs. State, 5 Id. 48; Dukes vs. State, 11 Ind. 557; Powell vs. State, 19 Ala. 577; Carroll vs. State, 23 Id. 28; Shorter vs. People, 2 Comst. 193; Prigden vs. State, 24 Tex. 420; State vs. Keene, 50 Mo. 357.

4. Actual and positive danger is not indispensable to justify killing in self-defence. It is only necessary that the danger should have been apparent. The true question is not whether such danger actually existed, but whether the prisoner had reasonable ground, in the opinion of the jury, to believe himself in danger of great bodily harm or loss of life. It is not essential that it should appear that the peril was imminent, or that the danger was great, or that the prisoner had no other means of escape than to kill his antagonist. There need not have been actual impending danger. If the defendant believed, and had reasonable ground to believe, that there was immediate impending danger, and he had no other apparent and safe means of escape, he had a right to kill, although the supposed danger may not have existed. State vs. St. Geme, 31 An. 303; State vs. Chandler, 5 An. 489; State vs. Mullen, 14 An. 577; People vs. Campbell, 30 Cal. 312; Campbell vs. People, 16 Ill. 17; Hopkinson vs. People, 18 Id. 264; Adams vs. People, 47 Id. 376; Kaufman vs. Com. 10 Bush, 495; Munden vs. State, 37 Tex. 353; People vs. Lamb, 54 Barb. 342; Pond vs. People, 8 Mich. 150; Hurd vs. People, 25 Id. 405; State vs. Collins, 32 Iowa, 36; State vs. Sloan, 47 Mo. 604; State vs. Keene, 50 Id. 357; Logue vs. Com. 38 Pa. Stat. 265; Patterson vs. People, 46 Barb. 625; Noles vs. State, 26 Ala. 31; Taylor vs. State, 48 Id. 180; Dupre vs. State, 33 Id. 380; Wesley vs. State, 37 Miss. 327; Evans vs. State, 44 Id. 762; Head vs. State, Id. 731; State vs. Martin, 30 Wis. 216; State vs. Porter, 13 Kan. 414; State vs. Connolly, 3 Oregon, 69.

5. One need not flee or avoid his adversary, if a reasonable regard for his safety from imminent death or great bodily harm require him to stand. Whar. on Hom., §§ 485, 486; 1 Bish. Cr. Law, 6th Ed. § 850, p. 474; 1 East P. C. 71; 1 Hawk, P. C. Ch. 29, § 14; 1 Hale, P. C. 481; Foster, 273; 3 Inst. 56; Kelyng, 128, 129; 4 Bl. Com. 185; 1 Russell, 668; McNally, 562; State vs. Mullen, 14 An. 570; Creek vs. State, 24 Ind. 151; People vs. Cole, 4 Parker, C. C. 37; State vs. Pond, 8 Mich. 150; Carroll vs. State, 23 Ala 28; Com. vs. Selfridge, Hor. & Thomp. Cases, Self-Defence, 3, 18; State vs. Collins, 32 Iowa, 36; State vs. Thompson, Id. 188; State vs. Hill, 4 Dev. and Bat. 491; Oliver vs. State, 17 Ala. 587; Pforner vs. People, 4 Parker C. C. 558; Aaron vs. State, 31 Ga 167; Com. vs. Carey, 2 Brows. 404; Tressor vs. State, 77 Ind. 274; State vs. Potter, 13 Kan. 414; Kingen vs. State, 45 Ind. 518; Ross vs. State, 10 Tex. App. 453; Tweedy vs. State, 5 Iowa, 433.

6. One need not await an attack, if it be reasonably apparent to him that his danger may increase by delay, and in such case he may act in self-defence. An actual physical attack need not precede a resort to the right of self-defence. State vs. Scott, 4 Iredell, 408; Harrison vs. State, 24 Ala. 67; Rippy vs. State, 2 Head, 217; People vs. Lamb, 54 Barbour, 342; 2 Keyes 360; Philips vs. Com. 2 Duv. 323; Smaltz vs. Com. 3 Bush, 32; Young vs. Com. 16 Id. 312; State vs. Martin, 30 Wis. 216; 9 Kan. 119; State vs. Potter, 13 Kan. 414; Goodal vs. State, 1 Oregon, 333; 3 Id. 69; Cotton vs. State, 31 Miss. 504.

7. The accused need not establish his facts beyond a reasonable doubt, or by evidence preponderating over that of the State, in order to secure an acquittal. He should be acquitted, if a reasonable doubt of his guilt remain after a consideration of all the evidence in the case. Whar. on Hom. § 649; 24 Pick. 366; 2 Met. 340; 1 Moody, C. C. 154; Tweedy vs. State, 5 Iowa, 433; 3 Greenl. Ev. § 28; Whar. Am. Cr. Law, § 707; 1 Hawk. P C. c. 62, § 2; 1 Russ. on Cr. 7 Am. Ed. 750; 3 Bl. Com. 121; 2 Met. 24; 9 Id. 116; 5 Cush. 305; 1 Gray, 63, 64, 65; Sumner vs. State, 5 Blackf. 580; Davis vs. State, 10 Ga. 101; People vs. Brannon, 47 Cal. 96.

8. If the circumstances, whether proved by the State or the accused, preponderate even, in favor of the plea of self-defence, there instantly arises a reasonable doubt of guilt, and his acquittal should follow. See authorities cited under last preceding paragraph, and State vs. Hamilton, 13 Nev. 386; McAdory vs. State, 62 Ala. 154; State vs. Payne, 86 N. C. 609.

9. The plea of self-defence does not allege or assume to prove anything outside of the case on the part of the prosecution. It devolves upon the State to prove both the felonious killing and the criminal intent. If, from the testimony adduced on behalf of the prosecution, or from the evidence introduced for defendant, or from both, the jury be unable to say beyond a reasonable doubt that the killing was not excusable, the prosecution has failed to establish its charge, and there must be an acquittal. The evidence under such a plea relates solely to the original transaction constituting the alleged criminal act, and forms part of the *res gestæ*. Whar. Am. Cr. Law, § 707, n.; Com. vs. McKie, 1 Gray. 61; Com. vs. York, 9 Met. 116; Com. vs. Webster, 5 Cushing, 305; Tweedy vs. State, 5 Iowa, 433; 69 Mo. 451; State vs. Fowler, 52 Iowa, —; State vs. Morphy, 33 Iowa, 270; State vs Porter, 34 id. 131, 140, (Rep. in 2 Crim. Law Mag. 48); Dubose vs. State, 10 Tex. App. 230; Smith vs. State, 58 Miss. 867; People vs. Smith, Cal. Sup. Ct. 8 Pacific Crim. Law J., Jan. 28, 1882, p. 970; State vs. Porter, 33 Iowa, 131; State vs. Felter, 32 id. 49.

10. The State must prove that the killing was malicious; otherwise there should be an acquittal as to the charge of murder. The existence of the essential ingredient of malice is not decided by a presumption from the fact of killing, or the use of a deadly weapon. The true rule is that all the facts of the case taken together are to be considered, and from these the question to be decided is, whether the defendant acted maliciously.

Where the evidence tends to show that a deadly weapon was used by the accused in self-defence, the law does not presume malice from its use. The presumption is repelled by such use of a deadly weapon. A pre-determination to kill does not necessarily constitute the malice aforethought essential to the crime of murder, when there is evidence supporting a

State vs. Riculfi and McClung.

plea of self-defence. Whar. Hom. § 39; Id. § 671, and authorities there cited; Com. vs. Webster, 5 Cushing, 305; State vs. Knight, 43 Maine, 11; McDaniel vs. State, 8 Sm. & Marsh. 401; approved in Green vs. State, 28 Miss. 688; Hague vs State, 34 Id. 616; State vs. Patterson. 45 Vt. 308; Dixon vs. State, 13 Fla. 636; State vs. Gillick, 7 Iowa, 287; Kilpatrick vs. Com. 31 Pa. Stat. 198; State vs. Bertrand, 3 Oregon 61; 1 Arch. Cr. Prac. & Pl., Waterman's note, p. 851; 4 Bl. Com. 201; State vs. Zellers, 2 Halst. 220; Head vs. State, 44 Miss. 731; Com vs Selfridge, Hor. & Thomp. Cases Self-Defence, 19; Schlenker vs. State, 9 Neb. 241; 5 Id. 377; 6 Id. 136: Douglass vs. State, 8 Tex. App. 520; Id. 90; Id. 597; State vs. Cooper, 71 Mo 436; Sweeney vs. State, 35 Ark. 585; People vs. Crowey, 56 Cal. 36; Com. vs. Hawkins, 3 Gray, 463; Harris's Crim. Law, p. 136, n.; Erwin vs. State, 29 Ohio St. 191; State vs. Trivas, 32 An. 1090; State vs. Swayze, 30 An. 1323; Foster's Cr. Law, 255; Roscoe's Crim. Ev. 20; 2 Bish. Cr. Pro. § 621.

11. It is proper for the jury to consider, in estimating the value of the plea of self-defence, whether there be trustworthy evidence of threats made by deceased against the accused, indicating his disposition or purposes relative to him as a matter of fact; and if the jury find that such threats were made and communicated to the accused before the homicide, they will be regarded in coming to a conclusion whether the accused had ground to fear death or great bodily harm at the hands of the deceased. 2 Bish. Cr. Pro § 630; Rippy vs. State, 2 Head, 217; Pridgden vs. State, 34 Tex. App. 420; People vs Scoggins, 37 Cal. 677; Jackson vs. State, Sup. Ct. Tenn. Hor. & Thom. Cases Self-Defence, 476; Howell vs. State, 5 Ga. 48; Monroe vs. State, 5 Id. 85; Dukes vs. State, 11 Ind. 557; Stokes vs. People, 53 N. Y. —; S. C. Hor. & Thom. Cases Self-Defence; State vs. Goodrich, 19 Vt. 116; State vs. Keene, 50 Mo. 357; State vs. Sloan, 47 Id. 604; State vs. Collins, 32 Iowa, 36; State vs. Ricks, 32 An. 1098.

12. When one honestly and reasonably believes that he is in imminent danger of losing his life or suffering great bodily harm at the hands of another, he has the right to take other's life, if need be, to protect himself.

His justification will rest upon and be found in his honest and reasonable belief, under the circumstances shown, notwithstanding it should afterwards appear that he had not been in actual danger.

It was error to give the jury in charge, as a rule of law, that defendant could not avail himself of the plea of self-defence, under the circumstances here recited, unless he had been actually assaulted by the deceased. An actual physical assault is not necessary to constitute the overt act justifying a killing in self-defence. State vs. Cooper, 32 An. 1085-6; State vs. Jackson, 33 An. 1088, and cases cited in the 5th paragraph of syllabus.

The opinion of the Court was delivered by

MANNING, J. The defendants were indicted for the murder of William F. Fackler. McClung was acquitted. Riculfi was convicted, the verdict being qualified "without capital punishment," and was sentenced to hard labor for life.

The case comes up on a bill of exception, an assignment of errors, and a motion for a new trial.

The errors assigned are alleged misdirections of the court in its charge to the jury, a mode of presenting such matters for review so unusual, and so contrary to established practice, that the prisoners' counsel have found it necessary to offer an explanation to excuse it, in the circumstance that the charge was delivered late at night. They assert however that their right to submit these matters for review

under that form "rests upon repeated adjudications of this Court." Eight cases are cited as sustaining this assertion, one of them being a civil cause and of course wholly out of the domain of the subject, and not one of the others, with a single exception, sustaining or countenancing the practice. That exception is State vs. Ricks, 32 Ann. 1098, which was qualified on the first opportunity the Court had to intimate its incorrectness, State vs. Beaird, 34 Ann. 104, and which is as there admitted contrary to authority, and again in State vs. Curtis, not yet published, and may now be considered as overruled.

The reason why this practice is not permitted is obvious. By it the Judge has no opportunity to explain his charge—none to state that as given it was pertinent to the facts of the case, and that a fuller charge was not demanded by the circumstances attending the commission of the act for which the defendant is prosecuted. Bills of exception should have been taken to those parts of the Judge's charge which were deemed to be wrong, which will always bring them up with the Judge's reasons, and such facts as are necessary to shew how the law was applied. They cannot be examined on an assignment of errors. Even a bill of exception, taken to the charge as a whole, is not allowed. State vs. Chopin, 10 Ann. 458. An assignment of errors in criminal practice is for another purpose than correction of the charge of the court.

The motion for a new trial is in the main a repetition of what had been already set up in the bill, and both consist of twenty special charges which the court was requested to make, part of which were refused, and a part given with modifications. Almost all of them are taken from works on criminal law of accepted authority, or from decisions of courts where the points were presented and the ruling was therefore apposite. As abstract propositions of law they are correct, but if it were permissible to require a Judge to charge every correct legal proposition because it is correct, although it had no bearing on the case on trial, criminals might postpone their punishment until the contents of every text book on criminal law were exhausted in tendering to the Judge separate and isolated charges, and juries would be so thoroughly mystified, that their modern vocation of "judges of the law" could scarcely be performed to the satisfaction of those who try to invest them with this startling prerogative.

So patent are the objections to this attempt to overload and encumber the law as expounded by the court, that it has been repressed universally, and it is no longer open to controversy that a court not only may, but should refuse to charge an abstract legal proposition which has no bearing upon the case on trial. Long vs. State, 12 Ga.

293; Daniel vs. State, 8 Smed. & Marsh., 101; Pate vs. People, 3 Gilman, 644.

And this is equally true whether the proposition be correct or incorrect. The refusal to charge a correct proposition, if it is inapplicable, will be sustained as readily as if it were incorrect. People vs. Cunningham, 1 Denio, 524; Murray vs. State, 18 Ala. 727; Morris vs. State, 25 Ala. 57.

Or if it be correct in part, and wrong in part, the Judge may refuse to charge it. Tomlinson vs. People, 5 Parker, 313. It is not for the Judge to eliminate what is right from what is wrong in the requested charge. The defendant who requests a special charge is supposed to know what principle of law he invokes, and how to state it in proper form.

This matter has been frequently adjudicated, and has been presented in every variety of aspect, so that even if the instruction, in the form in which it is asked, requires limitation, or qualification, or explanation, it may properly be refused. State vs. Rash, 12 Ired. 382; Swallow vs. State, 22 Ala. 20; Preston vs. State, 25 Miss. 383; Baxter vs. People, 3 Gilman, 368.

And this Court has all along been in accord with those whose decisions we have cited. In Stouderman's case, 6 Ann. 286, it was said to be the duty of the prisoner's counsel to have shewn by his bill of exceptions that he asked for instructions to the jury that would have had a material bearing on his case, and that he did not require the court to charge the jury upon abstract principles of law, p. 287. And in State vs. Thomas, 34 Ann. 1084, this was affirmed, the court saying, it is not the duty of the Judge, nor is it proper, to announce to the jury abstract principles of law, not involved in the pleadings and evidence, however correct those propositions may be.

The refusal to give some of the special charges requested was that given in Roberts' case 10 Ann. 264, i. e., that they had been substantially given already in the charge and the refusal to give others was for inapplicability. It is not possible for this Court to determine their applicability unless the bill of exceptions informs us of the circumstances to which the legal principle is sought to be applied. The bill should therefore inform us of the facts to which the charge is claimed to be pertinent, State vs. Jackson, 12 Ann. 679, State vs. Nelson, 22 Ann. 425, and this does not at all militate against the cardinal rule that this Court does not take cognizance of facts in a criminal trial.

This requisite was perceived in drawing the bill of exceptions in this case, which opens with the statement that " evidence having gone to the jury that threats of the deceased to take the life of the defendant

had been communicated to the latter prior to the homicide, as well as evidence of an assault upon the person of Riculfi by deceased some two months before the homicide, and that shortly before the homicide the deceased was searching for Riculfi, and evidence that Riculfi apprehended that deceased would carry his threats into execution," therefore the instructions set forth are prayed.

Upon this the Judge emphatically declares: " The court positively asserts there was no evidence introduced in support of the plea of self-defence, and that although it was shewn that threats made by Fackler against Riculfi had been communicated to the latter on one occasion two months before the killing, and on another occasion one month before, and though it was also established still on another occasion (but before any threats had been communicated to defendant) the deceased had seriously assaulted him at his (deceased's) own house; not a particle of evidence was given to shew that at the time and place when and where Fackler was killed, he (Fackler) had exhibited the least intent of carrying his threats into execution. In other words there was utter failure on the part of the defence to establish any overt act whatever on the part of Fackler when defendant shot him."

We are thereupon asked to apply the rule in Tompkins case, 32 Ann. 620, which is to reject both, and that being done, there would be nothing to inform us whether the requested charge is an abstract proposition of law, or one of practical importance and pertinence to the case on trial. The correct rule is that given in State vs. Ladd, 10 Ann. 271, viz., that the Judge should correct erroneous statements of facts in a bill of exceptions. But in truth the two statements do not materially differ about the facts of which both speak, viz., of what happened antecedent to the homicide, but of what the evidence was at the time of the homicide the Judge alone speaks, and where there was no evidence of self-defence then whatever, sufficient or insufficient, it was only needful to expound the general law touching it to guide the jury in considering what effect upon the guilt of the prisoner the testimony of antecedent acts and words would have, and this was done correctly.

Evidence of the character of the prisoner appears to have been offered, since the court charged as follows:

" Evidence of character is always admissible in behalf of an accused, and on many an occasion may be of vast advantage to him. The accepted doctrine about it is that it tends, under certain phases of a case at bar, to create a doubt which otherwise might not have existed in favor of the accused, or to remove a doubt already existing against him. The jury should look upon it as part of the whole evidence adduced upon the trial; but such evidence, however precise it may be,

cannot destroy the practical effect of direct and satisfactory statements of uncontradicted witnesses, nor should it be allowed to outweigh, still less destroy, any conclusive evidence of guilt."

Should the jury regard it in any other way than in connection with the whole evidence? And if conclusive evidence of the commission of the crime is before the jury, must they be told that the proof of good character outweighs it? If so, Dr. Webster could not have been convicted in Massachusetts, nor the Duke of Praslin in France, each of a homicide committed with a cool atrocity that puts to shame the bloodthirsty instincts of the ordinary murderer.

The defendant excepted to it, and also to the refusal of the court to charge these two propositions, which we give as illustrations of the numerous special charges requested:

" 16th. If a good character for peace has been proven, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed but for such good character."

" 17th. Evidence of good character is not only of value in doubtful cases, but is entitled to be considered when the testimony tends very strongly to establish the guilt of the accused. It will sometimes create a doubt, when without it none would exist."

That is very true and much more of the same tenor. There may be cases in which the same evidence, if against a person without character, would produce conviction, but if against one with a high character would not, and therefore character is an important element in a case. It would require stronger proof to have convicted Fenelon of highway robbery, or the late Sir Robert Peel of malicious mischief, than it would require for others whose characteristics and mental proclivities are not, as were theirs, conspicuously antipodal to these particular offences. But did not the Judge say all that was needful to be said in the case before him when he told the jury that evidence of character tends under certain circumstances to create a doubt which otherwise might not have existed in favor of the accused, or to remove one already existing against him? 1 Bishop Crim. Proc. § 1063.

We cannot disturb the verdict in this case. The jury passed upon the question of guilt under instructions upon the law, which so far as we are enabled to review them, are correct.

Judgment affirmed.

Rehearing refused.