## No. 9939.

### THE STATE OF LOUISIANA VS. JAKE DURR.

| | |
|---|---|
| 39 | 751 |
| 44 | 324 |
| 39 | 751 |
| 50 | 1139 |
| 39 | 751 |
| 113 | 730 |
| 39 | 751 |
| f118 | 149 |

The rule that the right of peremptory challenge is waived when the juror is passed over to the opposite party, cannot be maintained without qualification; but it must be exercised before the juror is accepted by the opposite party and commenced to be sworn.

Neither the prosecution nor the accused, though he be one of two, or more, jointly indicted and on trial, can be heard to complain of peremptory challenges tendered by the other.

Evidence pertaining to collateral issues, disconnected with the charge against the accused, cannot be introduced. Same would be confusing and misleading to the jury.

It is improper that the trial judge should give to the jury a special charge which contains statements of fact, although hypothetically stated, if likely to influence the mind of the jury in reference to the facts proven in the case.

The judge is not forced to adopt the language in which defendant's counsel may couch a requested special charge; he may recast the propositions and submit them in his own *terms.* When special instructions asked for, are partly correct and partly erroneous, the judge is neither bound to affirm nor repudiate it as a whole, but he may restate it in his own terms.

The correctness of the refusal of the district judge to sign *one* bill of exceptions cannot be tested by the presentation and signing of *another*, with reasons assigned. It must be presented in a different form of proceeding.

APPEAL from the Tenth District Court, Parish of DeSoto. *Hall,* J.

*M. J. Cunningham,* Attorney General, and *J. C. Pugh,* District Attorney, for the State, Appellee:

State vs. Durr.

1. A tender of the juror to the accused is no waiver of the right of peremptory challenge. Wharton, P. and P. § 675; Waterman, C. D. P. 602 (140); Wharton, C. P. and P. 672; Bishop on C. P., Vol. 1, § 945; Proffat Jur. Trials. §§ 105, 165; State vs. Roland, 38 Ann. 19.

2. The rejection of a juror by the trial judge, *even if erroneous*, affords of itself no legal ground of complaint to the accused. 1 Bishop C. P. § 926; State vs. Ostrander, "13 Iowa, 435;" Wharton, Cr. Pl. and Pr., § 620; State vs. Barnes, 34 Ann. 395; State vs. Eloi, ib. 1195; State vs. Farrar, 35 Ann. 315. This is no longer an open question in criminal jurisprudence. State vs. Creech, 38 Ann. 481; State vs. Shields, 33 Ann. 1410.

3. A witness cannot be interrogated, *even on cross-examination*, about immaterial and collateral matters.

4. General character for "badness" or "infamy" is inadmissible. Wharton Cr. Ev. §§ 472 484 and 486.

5. The test of whether a fact inquired of, on cross-examination, is collateral, is: would, the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea. Ib. § 484, and authorities therein cited.

6. The court is not bound to give instructions in the words asked for, however material might be the instructions; but if given substantially, so as to meet the whole of the point, it is sufficient. State vs. Carr, 22 Ann. 407; State vs. Porter, 35 Ann. 1159.

7. The trial judge may withdraw an erroneous instruction, and correct his error. State vs. Jones, 36 Ann. 204. Can withdraw illegal and incomplete evidence of the jury. State vs. Davis, 34 Ann. 351; State vs. Parce, 37 Ann. 269.

8. The trial judge is limited to the law, and cannot trench on the facts. R. S.

9. The trial judge is not required to give a special charge when it is substantially covered by his general charge to the jury.

10. Proper way to secure the signature of the trial judge to a bill of exception is by mandamus. 17 Ann. 287; 26 Ann. 67. The judge properly refuses to sign a bill of exception which does not conform to the facts.

*E. W. Sutherlin* and *Scales & Lee* for Defendant and Appellant.

The opinion of the Court was delivered by

WATKINS, J. The defendant was indicted for an assault upon Julia Hutchins, with an intent to commit a rape, and from a verdict of guilty and sentence by the court to imprisonment for one year at hard labor, he has appealed.

The alleged irregularities in the proceedings and errors of the trial judge are presented by sundry bills of exception reserved for the accused.

I.

The *first* one was taken to the judge's allowing the district attorney to *peremptorily* challenge a juror *after* he had been examined on the part of the State on his *voir dire* and surrendered to defendant's counsel for examination.

The argument is that the State had fully examined the person tendered as a juror, and had *accepted* him, and that the district attorney had no right to *reconsider* his acceptance and selection, and

thereafter peremptorily challenged and discharged the person from service as a juror.

The trial judge ruled that the right of either party to challenge a juror may be exercised at any time before the juror is sworn, and that defendant has no right to complain, because he may only exercise the right of *rejection*, and not the right of *selection*, by the State.

In this State the right is given to the prosecution to exercise peremptory challenges, as well as to the accused. R. S. 997, 998, Act 36 of 1880.

At common law the prosecution was not entitled to peremptory challenges.

Whar. Crim. Plead. and Practice, Sec. 612, that author says: "Under ordinary circumstances the *defendant's* right to a *peremptory* challenge is waived when the juror is *passed over* to the court or the prosecution, though this opinion cannot be maintained without qualification, as, on due cause shown to the court at any moment *before the case is opened and the juror in question is sworn*, it will permit the challenge.

"In *any* view, the right ceases when the panel is complete and accepted." *Ibid*, Sec. 617.

In another section the same author says, in discussing the same subject, "that the better opinion is that, on due cause shown, the right may be exercised at any period down to the completion of the panel." Ibid, Sec. 677.

We do not understand the phrase "on due cause shown," occurring in these two quoted sections, to relate to *challenges for cause*. Same must be understood in the sense of reason, or excuse—i. e., that the defendant may make a *peremptory* challenge, *after* he has passed the juror, if he can assign to the court a reasonable excuse for the delay in preferring it. *Peremptory* challenges *alone* are under discussion in those sections.

This being the rule at common law, where the prosecution has no right to exercise peremptory challenges, there is no good reason why it should not apply to this State, where the prosecution is so entitled. In treating of its exercise in those States whose laws are similar to our own, Wharton says: "The challenge, either *by the prosecution or the defense*, must be before the oath is commenced, down to which time it exists. The moment the oath is begun it is too late." Ibid. Sec. 672; 1st Bishop Crim. Plea. and Prac. Sec. 945. But same author says: "It is no waiver of the right to challenge *for cause*, for the de-

48

fendant to pass the juror over to the court, or to the opposite side for examination." Ibid. Sec. 675.

The rule laid down by this Court's predecessors in State vs. Cummings, 5 Ann. 332, is that "the State should first exercise the right of challenge *for cause or peremptorily*, and present the juror to the accused as a good and lawful juryman; that the accused should then exercise his right; and that *the State should not be allowed to challenge after the juror has been accepted by the prisoner.*"

Wharton says "the right of *peremptory* challenge is a right *not to select, but to reject.*" Ibid. Sec. 620.

Hence, neither the State nor the defendant has any right to complain of peremptory challenges tendered by the other. .

"Neither of two defendants, in one indictment, on a joint trial, has cause to complain of a challenge by the other." Ibid. Sec. 680.

In United States vs. Marchant, 12 Wheaton 482, the Supreme Court say: "The right, therefore, of (peremptory) challenge does not, necessarily, draw after it the right of *selection*, but merely of *exclusion*. It enables the prisoner to say who shall *not* try him; but not to say who *shall be* the particular jurors to try him." 4 Blackstone, p. 353.

It is clear that the district attorney had the legal right to *peremptorily* challenge the juror, E. V. Flores, at any time prior to his *acceptance* by the accused.

II.

A *second* bill was reserved by the defendant's counsel to the refusal of the court to allow him to ask Will Collins—a witness for the State under cross-examination—if he had "seduced his cousin, Julia Laurent, who lived in proximity to his mother's house." The ground on which counsel maintains the competency of the testimony is " that it will show that he is a seducer; and the true motive of the said Oscar Collins and Will Collins, brothers, in going, at that time, to the house of the prosecutrix, their cousin; that their true purpose and motive (in) going there was * * * * for the purpose of entrapping and overtaking the defendant, at the house of the prosecutrix, by prior arrangement and agreement between them," etc.;        *        *        * " and that their going to the house was not by accident, or for the purpose of protecting the prosecutrix against the defendant," etc.;    *    * *    *    *    * " and that the said Oscar and Will Collins and defendant were rivals and competitors for the *illicit* love of the prosecutrix," etc.

The trial judge assigns the following reason for disallowing an answer to the question propounded, viz: "The matter inquired

about, the seduction of Julia Laurent by Will Collins, occurred five or six years ago, and that unfortunate girl has been dead several years; and the court was unable to see how *that* circumstance could have any relation to this case, or any tendency to prove a conspiracy, etc., as claimed, especially as there was *no evidence whatever* of a conspiracy, or that the Collinses went to the prosecutrix's house for any improper purpose," etc.

We agree with the district judge. If admitted, and the answer had been an affirmative one, it could not have effected in any way the issue joined on the charge of assault, with intent to commit a rape. The alleged seduction was a collateral issue not on trial, and totally disconnected from the alleged criminal assault by the accused upon an entirely different person.

The ruling is approved.

## III.

A *third* bill was reserved by the defendant's counsel to the refusal of the trial judge to give the jury the following special charge, viz:

"In cases of this kind, the evidence of the prosecutrix is to be received with caution. In coming to your conclusion as to whether the defendant assaulted the prosecutrix with intent to rape her forcibly and against her will, if you should find that he assaulted her at all, you must take into consideration all the suerounding circumstances at the time. The question of intent is one of fact to be deduced from all the circumstances surrounding the case. If you should find that any assault was made by the defendant on the prosecutrix, then, in coming to your conclusion as to whether such assault was made with intent to rape her, notwithstanding such resistance as she might make, such facts, as that the assault was made in the day time; in a place near the public roads, or railroads, or depots, houses or places open to public view; occupied by, and frequented by people; within reach of assistance, and within sight and call of assistance, and that she made no outcry or call for assistance, and made no effort of escape when she had opportunity to do so; or that she remained alone in the house, so situated, with the defendant, for any considerable period of time, after she suspected the intent of defendant to rape her; or that she quietly remained alone in the house, so situated, with defendant, for a considerable period of time after such alleged assault, and that she only made outcry to a person who *unexpectedly approached* the house, and who was not discovered until immediately in the presence of defendant and prosecutrix, who were then, or had been for some considerable period of time, seated,

in quiet conversation, after the alleged assault had been made, if any assault had been made; and, all such circumstances, justify strong inferences that the assault, if any assault was made, was not made with the intent, on defendant's part, to rape the prosecutrix, notwithstanding all resistance she might make."

The court refused this charge as a whole, but accepted part of it The portion of the special charge adopted by the court and read to the jury was the second and third sentences thereof as follows:

" In coming to your conclusion as to whether the defendant assaulted the prosecutrix with intent to rape her forcibly, and against her will, if you should find that he assaulted her at all, you must take into consideration all the surrounding circumstances at the time. The question of intent is one of fact to be deduced from all the circumstances surrounding the case." .

The bill further recites that defendant's counsel had requested previously, that a written charge be given, and that it was given ; and it charges that, after having declined to make the special charge requested, the trial judge announced *orally*, " that in lieu of the remaining portions of said special charge," he would read certain sections of Wharton's Criminal Law, which are copied into the bill.

He insists that the action of the court in refusing said special charge, " *as presented* in writing, was illegal, and that it was the duty of the court to have read to the jury the special charge *in full, as presented, or to have rejected it in full.*"

He further excepts to the *oral* statement made by the judge to the jury, in declining to make the special charge requested ; and to his *reading* law to them from books, as applicable to the case, on the ground that the accused was entitled to a charge *exclusively* in writing.

Further, that " the *attempted withdrawal* thereof from the jury, after objection was made by the defendant's counsel, and the attempted reduction of it to writing, was illegal. That the written charge had already, theretofore, been completed and read to the jury, and that *the additional* charge, reduced to writing and read to the jury, was not requested by the defendant or the State ; and that the court, after having furnished the written charge to the jury, had no right to write and read other and additional charges or sections of the law ; and the action of the court was calculated to confuse and mislead the jury."

The bill is *in extenso* and purports to recite much of the evidence that was adduced upon the trial, and which was reduced to writing, and appears in the record annexed to bill No. 2.

The judge, in the reasons that are annexed to this bill, makes the

statement that the *special charge* asked for contains a *partial* statement of the evidence, with facts *proved* intermingled with what was *not proved*, and partial statements of the testimony of prosecutrix, omitting the reasons she gave for not making an outcry or escape, viz: that defendant threatened to kill her if she cried out or attempted to escape, which, if given by the court to the jury, would have been likely to have influenced their decision on the facts by reciting in their hearing and refreshing their memories upon a partial and incorrect statement of them, without giving them the law applicable to the whole and correct statement of facts.   *   *   *   That if the court had given this special charge, as asked for, it would have been charging the jury on the facts, in violation of R. S., Sec. 991," quoting it.

"It will be observed that the statement of facts in the special charge rejected, is not given hypothetically, but in the narrative form."

It is elementary that the trial judge is forbidden to charge the jury on the facts; and it is equally improper that he should give them in charge, partial statements of fact, although hypothetically stated, if likely to influence their minds upon the facts in the case.

Hence the rule announced by Wharton, that the judge is not "forced to adopt the language in which counsel may couch instructions prayed for; but may *recast* the propositions, and submit them in his *own* terms; nor is he, when an instruction asked for is *partly correct, and partly erroneous, bound either to affirm or repudiate it as a whole; but as has been seen, he may restate   *   *   the law* in his own terms." Whar. Crim. Plea. and Prac., sec. 712,

This Court has followed that rule in State vs. Porter, 35 Ann. 1159.

In State vs. Jackson, 35 Ann. 769, this Court held that where the "charge requires qualification, limitation or explanation, the refusal of the judge to give it will not be disturbed." 35 Ann. 775, State vs. Riculfi; 36 Ann. 84, State vs. Chevallier.

The reasons assigned by the judge for his ruling appear to be ample and strictly in accord with the authorities quoted.

In reply to the counsel's objections to the judge's *oral* statements, and explanation of his refusal to give the special charge requested, to the jury, he says: "The *oral* remarks withdrawn and given in writing, it is believed, could not have prejudiced the defendant."

The course pursued by the trial judge in this particular, finds sanction in decisions of this Court.   36 Ann. 204, State vs. Jones; Waterman's Crim. Dig. pp. 379, 624.

Whether the *oral* observations made by the judge were withdrawn,

or in substance reduced to writing and read to them, is of no practical importance. The defendant's counsel contends that there is a fatal variance between the judge's *oral* statements and his supplemental written charge; and prejudicial to the accused.

Neither the record nor the bill of exceptions discloses such variance and we cannot therefore consider that question.

## IV.

The *fourth* bill presents an objection to the judge's declination to give another special charge and which he refused on the ground that the matter covered by it was substantially embraced in the written charge already given to the jury.

The charge given to the jury was not brought up with the transcript and is not included in it, and we cannot make the comparison, and must accept the judge's statement as correct.

It was quite unnecessary that any part of the charge should have been repeated. Such a course would have been confusing and misleading to the jury.

## V.

The *fifth* bill was taken to the judge's refusal to grant the accused a new trial.

The affidavit appended to the motion is elaborate, and to the effect that, in the hurry of the preparation of the special charge discussed in Bill No. 3, defendant's counsel made an accidental mistake and omission therefrom, of the words "if you find such circumstances to have been proven," and which it was his intention to have incorporated therein, and that he was unaware of such a mistake having been made until some time afterward; and that he subsequently proposed to add same thereto, but was refused permission by the judge so to do; and that same exercised a prejudicial effect upon the special charge requested and refused.

On this ground only his application for a new trial rests, though the bill of exceptions to its refusal mentions the three first bills taken.

The judge assigns as the reason why he refused to grant a new trial that he did not believe that defendant was prejudiced by any ruling he had made, or by the failure of his counsel to present his special charge in hypothetical, rather than narrative form.

We do not regard the omission from the requested special charge of the qualifying words as having produced any material difference in the ruling of the court, or as having exercised any injurious effect upon the verdict of the jury. The judge gave them in charge the substance of the requested charge; and whether the statement of facts, or the ref-

·erence made to them in the charge had been stated hypothetically, or as proven facts, the same should not have been given to the jury, if the judge believed they might unduly impress the minds of the jury as to what were proven facts. The charge of the judge should in no wise *trench* on the facts. It must be strictly confined to an explanation of the law applicable to the case.

The application for a new trial was properly refused.

The *sixth* bill of exceptions was taken to the refusal of the judge to sign another bill of exceptions with the special charge, so altered as to ·conform to the theory of defendant's counsel in reference thereto, as set out in his affidavit for a new trial annexed. Among other reasons the judge assigns for refusing to sign the bill in this form, is that "it would be to sign what is not true, as the court never refused the charge ·as therein presented."

In this refusal the court was correct. But, if error there was, same could not be reversed in this form of proceeding.

Finally, our study of this case has convinced us that defendant has had a fair trial.

Judgment affirmed.