PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN MÁRQUEZ ROSA ET AL., Defendants and Appellants.

No. 4832. Argued April 26, 1933.—Decided July 11, 1933.

*F. Rodríguez Alverio* and *V. M. Fernández* for appellants. *R. A. Gómez, Fiscal,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is a prosecution for mayhem. The information in its pertinent part reads thus:

"The said Juan Márquez and José Vázquez Acosta, on June 7, 1931, in the Municipality of Las Piedras, within the judicial district of Humacao, P. R., unlawfully, wilfully, and maliciously assaulted and injured the person of Rafael López de Victoria, Jr., striking him in his left eye with a bat and a piece of board, as a result of which the said Rafael López de Victoria, Jr., has totally and permanently lost the use of his left eye."

Defendants pleaded not guilty and asked to be tried by a jury. The trial took place on March 24, 1932, and the jury rendered a verdict of guilty. Six days afterward the court rendered judgment sentencing each of the defendants to two year's imprisonment in the penitentiary at hard labor. Thereupon the defendants took the present appeal.

The evidence for the prosecution consisted in the testimony of the injured person, of Doctor Bernabe, of a policeman, and of an eyewitness. It tends to prove that the accused committed the offense. The evidence for the defense consisted in the testimony of witnesses who were present at the place of the occurrence.

It tends to prove that the defendants did not assault the person injured. The jury adjusted the conflict against the accused.

Two errors have been assigned in support of the appeal. By the first assignment the instructions of the court to the jury are attacked on five grounds. By the second, it is maintained that the verdict of the jury is contrary to law and the evidence.

Before entering into a discussion of the errors assigned, it seems advisable to remember that the rule is that when the accused desires to object to any part of the instructions delivered by the court to the jury he must draw the atten-

tion of the court so that it may have an opportunity to correct them. Otherwise only in cases involving fundamental questions will such an objection be considered on appeal.

The first objection to the instructions is that the words, "If I am not to blame, why do you hit me? I am not to blame," attributed by the judge to the injured person, and the following portion of his instructions, to wit: "the policeman on duty who testified having seen the occurrence stated that he saw someone standing in front of the automobile of López de Victoria, and that when he arrived at the place of the occurrence he saw Juan Márquez Rosa there; that Juan Márquez Rosa told him that nothing happened, that he was not hurt nor had he injured Rafael López de ,Victoria," are not supported by the evidence and greatly influenced the minds of the jury, to the prejudice of the defendant.

The evidence of the Government was, in short, as follows:

Rafael López de Victoria, Jr., testified: That on June 7, 1931, he was driving his passenger car and "upon arriving at Las Piedras, there was a big fire . . . in the house of the Muleros and the cars could not pass, and I backed . . . and stopped." Policeman Calderón told him that he could pass if he hurried. While passing, a boy got in his way and to avoid killing him he deviated his car, and while he was still behind the steering wheel wondering whether he had injured the boy, there appeared the accused, Juan Márquez Rosa. He struck me in the back with a baseball bat . . . I turned intending to run away and he hit me again with the bat here . . . above the eye and crushed this . . . He flung the bat again and broke the steering wheel and moved to the front part of the car and dented a fender and went away; . . . and then this gentleman (pointing at the other accused Vázquez) came with a piece of board . . . and he struck and hit me in the same eye with the piece of board . . . "

He further testified that when he deviated his car it seems that he collided with a table of Márquez. He ex-

plained that he went to the hospital where they gave him first aid. Dr. Pressly attended him for four days. He came to San Juan where Doctor Bernabe rendered him professional services. He can not see anything with the left eye. Before the injury he could see.

Doctor Bernabe, an oculist, testified that he attended López de Victoria who has totally lost the use of his left eye, and that such loss might be due to a blow, which could have caused either an intercerebral hemorrhage resulting in atrophy of the optic nerve and the conjuctiva, or a fracture of the orbit and pressure on the nerve bringing about the consequent atrophy.

Policeman Calderón was on duty at Las Piedras. He mentioned the fire and having authorized the car of López de Victoria to pass recommending that he do it quickly. López started and "after I had passed the fire, a man by the name of Otilio, I do not remember his surname, appeared from the corner; he was not one of the defendants, and when López saw him he tried to stop and deviated . . . the car stopped there and I saw these two gentlemen strike . . . the passengers of the car, I did not see whom . . . Márquez had a bat . . . José Vázquez the piece of board . . . López was sitting in the driver's seat . . . he had an injury above his left eye . . . I took him to the hospital.

On cross-examination by the defense, he stated that the car of López had struck, besides Otilio, the defendant Márquez, who fell to the ground and sustained bruises in one hand and in a leg. Regarding the defendant Vázquez, he stated that he himself had informed the witness that the car had not struck him and that he had not done anything to the driver.

Bartolomé Arroyo, one of the passengers in López' car testified last and stated: "When we were coming out of Las Piedras, policeman Calderón ordered us to stop, as there was a fire in the store of the Muleros, and when the police-

man considered it convenient, he ordered us to pass, and as the car was getting speed, a man left the place of the fire to cross the road and the chauffeur in order to avoid running over him, reduced the speed but the car eventually struck him, and at that moment the car swerved to the left and struck this gentleman who was sitting on a table with a bat in his hands, and then he took the bat and struck him." He pointed at the defendant Márquez, and referring to López he continued to testify thus: "He was still in the car, and this gentleman (pointing at José Vázquez) took a piece of board and also struck Rafael López de Victoria two or three times." Upon being asked, "Did López de Victoria or any of you attack these gentlemen?" he answered, "No, sir, what López de Victoria said was: 'I am not to blame, why do you strike me so much?' "

The full testimony is much more explicit. We have only given a summary of it, while reproducing textually some statements of the witnesses. It can be seen from them that the words uttered by the injured person are similar to those attributed to him by the district judge, and that what happened as to the other question was that the judge confused the names of the defendants. If, instead of referring to Márquez, he had referred to Vázquez, his remarks would have been in accord with what the policeman had said; and when it is considered that in his very instructions referring to Márquez, the judge said: "It seems that when the car stopped or swerved to the left, it collided with the table, and Juan Márquez Rosa either fell or was struck by the car"; that the theory o f both defendants was that they did not commit any assault; and that the mistake was not opportunely called to the attention of the court in order to give it an opportunity to correct the same, it must be concluded that it is not the case of a defect which could be invoked for the first time on appeal and which would justify a reversal of the judgment.

Moreover, the fact that López hit Márquez while trying to avoid an accident, would not relieve Márquez of responsibility for attacking López in the manner he did. It might have served to explain the assault and as an extenuating circumstance to be considered when imposing sentence, but could have never formed the basis of a verdict of acquittal by the jury.

The second assignment of error is as follows:

"In giving special instructions to the jury on section 36 of the Penal Code, as the information did not charge that the defendants had 'acted jointly' or moved by 'a common purpose' and there was no evidence on that point."

The third assignment reads thus:

"In instructing the jury that the verdict in this case should conform to the following principles: 'If the gentlemen of the jury understand and believe that on June 7, 1931, in the Municipality of Las Piedras, within the judicial district of Humacao, P. R., Juan Márquez Rosa and José Vázquez Acosta, unlawfully, wilfully, and maliciously, and acting jointly, assaulted and attacked the person of Rafael López de Victoria, Jr., striking him with a bat and a piece of board, over his left eye, as a result of which the said Rafael López de Victoria, Jr., has totally and permanently lost the use of his left eye, then the gentlemen of the jury must find the accused guilty of the crime of mayhem which is the crime charged in this case,' as said instruction can not supply the fatal omission in the information of the words, 'acting jointly,' when referring to two defendants (Joinder of Parties)."

The judge in his instructions said:

"The court calls the attention of the gentlemen of the jury to the fact that two persons are accused in this case. Although it is true that, according to the record, one of the defendants requested at first a separate trial, it is a fact that subsequently he waived said right and asked to be tried jointly with the other defendant.

"According to section 36 of our Penal Code, all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid or abet in its commission,

are principals in any crime so committed. And where two or more persons jointly commit a criminal act, having united for its commission, whether through the physical violence of one or of all of them, acting separately or jointly, each person whose will shall have contributed to the commission of the crime, is in the eyes of the law as responsible for all the consequences of the act done, as if he alone had committed it.''

Then follows what has already been transcribed in connection with the third assignment herein. The above instructions were preceded by the following charge delivered by the court:

''As you have seen from the information which I have just read, the crime with which the defendants are charged is that of mayhem. Every person who unlawfully, wilfully, and maliciously, deprives a human being of a member of his body, or disables, disfigures or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear or lip, is guilty of mayhem. This is the text, almost literal, of the section of our Penal Code which defines mayhem.

''The Penal Code does not require, for the commission of the crime of mayhem, that a specific intention to maim be proved, for all persons are responsible of the natural consequences of their wilfull and malicious acts. Nor is it necessary to prove that the injured person has been deprived of an important member of his body, for the deprivation of any member of the body, whether important or not, constitutes mayhem. To make the instruction more clear: When a person has been maimed by another, there must be first an assault and battery; the assault is the act of attempting the blow; the battery is the act of striking or inflicting the blow on the person assaulted; this is assault and battery.

''Now, then, it is not necessary that the person assaulting and battering another have the deliberate intention of depriving him of a member of his body or of maiming him; if the battery results in mutilation he is guilty of mayhem, although he may not have had the intent to maim. For example, a blow with a machete on the arm, although the person striking it did not have the intention of cutting the arm, if as a result of the blow with the machete the arm is severed from the body, the crime committed is that of mayhem, because a human being has been deprived of a member of his body.''

We do not think that any essential error was committed. The defendants in arguing this assignment admit that if the information had charged that they had "acted jointly" the instruction would be correct. This was not necessary. The information is sufficient to show that Márquez and Vázquez are charged as principals or co-authors of the act, equally responsible.

Under our present system, all persons concerned in the commission of a crime (section 36 of the Penal Code) and who directly commit the act constituting the offense, or who, not being present, have advised and encouraged its commission, and all persons advising or encouraging minors under the age of fourteen years, lunatics or idiots, to commit any crime, or who by means of fraud, contrivance, or force, occasion the drunkenness of another person for the purpose of causing him to commit any crime, are principals in any crime so committed. Said system designates as accessories those who under the former system were known as *"encubridores."* The common purpose or concerted action to which the defense refers, is only required for certain crimes, such as that of conspiracy.

Moreover, if the defendants thought that the information was not sufficiently specific in failing to state the part that each of them took in the commission of the crime, they should have demanded a bill of particulars or request that the information be made more specific, but they did not do so. Defects in the information are not now under discussion; only errors in the instructions.

The fourth assignment of error is that the court failed to instruct the jury as to the meaning of the words "unlawfully, willfully, and maliciously." In support of this assignment two cases are cited: one from Texas and another from Louisiana.

The one from Texas is *Bowers* v. *The State,* 24 Tex. A. 542, 549, where it was said:

"To constitute the offense of maiming, the act must be done both *willfully* and *maliciously*. A *willful* act is one committed with an evil intent, with legal malice, without reasonable ground for believing the act to be lawful, and without legal justification. A *malicious* act is one committed in a state of mind which shows a heart regardless of social duty and fatally bent on mischief; a wrongful act intentionally done without legal justification or excuse.

"In trials for this offense the legal signification of the words 'willfully' and 'maliciously,' must be explained to the jury. (Willson's Texas Crim. Laws, secs. 876 and 877.) This, we think, was substantially and sufficiently done in this case."

The case from Louisiana is *State* v. *Cook*, 7 So. 64. A certain instruction was requested. The trial court refused the request, and gave an instruction it had prepared on the same point. The Supreme Court said:

"Act 17 of 1888 amends section 794 of the Revised Statutes by making it read thus: 'Whoever shall willfully and maliciously, with a dangerous weapon, . . . inflict a wound less than mayhem,' etc. The amendment consists in the addition of the words 'willfully and maliciously' to the original statute. The indictment, in the second count, distinctly charges a wounding less than mayhem, in the words of the amendment. It is therefore quite apparent that the charge given to the jury was pertinent and appropriate.

"The question in regard to which the judge was required by the law to give the jury instruction was the meaning and true significance of the word 'maliciously,' as it occurs in the act under which the indictment was found, and to this question his charge was responsive. It was his duty to do that, and it was not his duty to do more. We think he properly refused to charge that unless such malice is proven as would have made the offense murder, in case death had ensued, the accused cannot be convicted; because that would, in all probability, have been a misleading instruction, as there was no question of an attempt to murder raised by this count of the indictment or the law. For it has been frequently held that a judge should refuse to charge an abstract proposition of law which has no bearing on the case upon trial, whether that proposition be correct or incorrect. *State* v. *Riculfi*, 35 La. Ann. 770; *State* v. *Garic*, Id. 970; *State* v. *Hamilton*, Id. 1043; *State* v. *Ford*, 37 La. Ann. 443; *State* v. *Labuzan*, Id. 489; *State* v. *Daly*, Id. 576; *State* v. *Durr*, 39 La. Ann. 751, 2 South. Rep. 546."

No provision of law in force in Puerto Rico has been cited to us which would make it imperative for the court to explain to the jury the meaning and scope of said words. The attorneys for the defendants did not ask the court to make the explanation when instructing the jury. They heard the instructions and did not say anything when the judge finished. Under those circumstances, the omission can not subsequently be set up on appeal as an error justifying the reversal of the judgment.

At page 12, section 8, volume 1 of Blashfield's Instructions to Juries, it is said:

"When legal or technical term or terms not in common use and having a special meaning are used in instructing the jury, the court should explain such terms or define them.

"In some states statutory provisions require the court to submit such explanations and definitions of legal terms as shall be necessary and some decisions hold that it is indispensable that legal and technical terms should be defined and explained specially when requested, but ordinarily the failure of the trial court to define legal phrases or give definitions is no error unless the party objecting has requested a charge giving such definition in the lower court. And it has been held that the unexplained use in an instruction of a word having a technical legal meaning which is not essentially different from the meaning in common use is no ground for reversing a judgment."

Further on, at page 19, it is concluded:

"It is unnecessary and no error not to define words in the codes which are ordinary English words and which are commonly and ordinarily understood by people generally."

Although it can not be denied that here there were involved technical words defined by the statute itself—section 539 of the Penal Code—it is a fact that their meaning has become so well known that it can be asserted that they are of common knowledge.

The fifth and last ground of objection to the instructions is formulated thus: The charge does not contain "specific

instructions to the jury on the crime of assault and battery, simple or aggravated, although it was a case in which the defendants were two distinct persons who had not acted jointly and their defense was not self-defense but a denial of the facts.''

Section 286 of the Code of Criminal Procedure, as amended in 1913, provides:

"Section 286.—The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense.

"On an information for the crime of mayhem, the jury may find the defendant guilty of the crime of aggravated assault and battery, or of simple assault and battery, provided that at the trial it has been proved that the person assaulted has not been rendered wholly useless, so far as concerns any important member of his body."

Considering the result of the evidence for the prosecution and that for the defense, the judge was justified in confining his instructions to the crime of mayhem. If the jury believed the evidence of the defendants, it must render a verdict of acquittal; if it believed the evidence of the Government, it must find the defendants guilty as principals of the crime of mayhem. The defendant Márquez assaulted and struck López with a bat over one of his eyes, and the other defendant, Vázquez, assaulted and struck him with a piece of board in the same eye. López was disabled and lost the sight of his eye. It can not be determined which of the two blows caused such loss of sight, although it is certain that either one could have produced it.

The situation would have been different if Márquez had struck López with the hand or in another part of his body and then Vázquez would have struck him with the board in the eye, or if after Márquez struck him with the bat in the eye, Vázquez had struck him with the hand or in some other part of his body. The case is similar to that where two per-

sons fire at another, who is fatally wounded. Both parties. would be equally responsible for the homicide committed.

The second error assigned is that "the verdict rendered by the jury is contrary to law and the evidence." All that we have stated above shows the sufficiency of the evidence for the prosecution to support the judgment. The jury believed it. It was otherwise as to the evidence for the defense; and, since it has not being shown that the jury acted under the influence of passion, prejudice, or partiality, or that it committed a manifest, essential error, its verdict, which served as a basis for the judgment of conviction rendered by the lower court, must stand.

The appeal must be dismissed on the merits and the judgment appealed from affirmed.